Charles C. Bull, as Trustee under the Will of William
V. Brady, et al., Appellants, *v.* Frank V. Burton et al.,
Respondents.

**Real property — specific performance — when covenants con-
stitute incumbrances making the title unmarketable.**

1. The court should not compel the specific performance of a
contract to purchase real property when the purchaser would be
subject to an action at law for damages if restrictive covenants con-
stituting incumbrances on the title should be violated.

2. A covenant in a deed by which the purchaser and his repre-
sentatives, heirs and assigns, are prohibited from using specified
materials in erecting a building or buildings on the real property
conveyed, and also prohibiting the use of the property for specified
purposes, does not make the title to such property unmarketable if
the purchaser, his representatives, heirs and assigns, cannot use such
materials in the erection of a building thereon or the property for
the purposes mentioned because of some general statute or other
law which is equally prohibitive, where the possibility of a change
in the statutes or ordinances so as to permit the use of such building
materials as are fairly comprehended within such enumeration is
upon the facts disclosed too remote for practical consideration.

3. Where it appears, upon an examination of the covenants relating
to party walls in an agreement between the owners of adjoining lots
in a city, that the covenants are confined to the wall in construction
at the time the covenant was made — there being no express covenant
relating to rebuilding or repairing such wall and the right to extend
the wall being confined to an extension of the wall then in course of
construction — such covenant does not create an incumbrance,
especially where, as appears from the record herein, the parties
have entirely and effectually abandoned the right of extending
the party wall being erected at the time the agreement was
executed, each party having built an independent wall upon his
own lot.

4. Where there were three adjoining lots, the northerly lot being
owned by one person and the southerly lot owned by another and
the middle one owned by them as tenants in common, and the owners
thereof entered into an agreement in writing, for themselves, their
respective heirs and assigns, that they would not erect or use or permit
to be erected or used upon any of the three lots any stable either

public or private, such agreement creates a restrictive covenant which interferes with a right existing in the owners of the lots and constitutes an incumbrance.

*Bull* v. *Burton*, 177 App. Div. 824, affirmed.

(Argued April 16, 1919; decided July 15, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 18, 1917, affirming a judgment in favor of defendant entered upon the report of a referee.

This action was brought to compel the specific performance of a contract to convey real property. The contract provides for the delivery to the respondents of a deed in proper statutory short form conveying " the fee simple of the said premises, free of all incumbrances." The action is defended because the respondents allege that the appellants failed to perform their contract, and that there are certain incumbrances on said real property as will more fully appear in the opinion.

The issues joined herein were tried before a referee who made a report in favor of the respondents. On his report a judgment was entered from which an appeal was taken to the Appellate Division of the Supreme Court where the judgment so entered was unanimously affirmed. (*Bull* v. *Burton*, 177 App. Div. 824.) It is from that judgment of the Appellate Division that the appeal is taken to this court. Other facts appear in the opinion.

*Spotswood D. Bowers* for appellants. The covenant against carrying on certain trades upon the *locus in quo* does not render the title unmarketable. (*Korn* v. *Campbell*, 192 N. Y. 490; *E. L. Assur. Society* v. *Brennan*, 148 N. Y. 661; *Gebhard* v. *Addison*, 87 App. Div. 375; *Patterson* v. *Johnson*, 168 N. Y. Supp. 163; *Dime Savings Bank* v. *Butler*, 96 Misc. Rep. 87; *Scott* v. *McMillan*, 76 N. Y. 141; *Schwartz* v. *Cahill*, 220 N. Y. 174; *Smith*

v. *Cornell,* 111 N. Y. 558; *Eq. L. Assur. Society* v. *Bostwick,* 100 N. Y. 629; *Halstead* v. *Atterbury,* 105 App. Div. 532.) The party wall agreement did not render the title unmarketable. (*Wilmurt* v. *McGrane,* 16 App. Div. 412; *Ennis* v. *Brown,* 1 App. Div. 22; *Harsha* v. *Reed,* 45 N. Y. 415; *Cole* v. *Hughes,* 54 N. Y. 444; *Scott* v. *McMillan,* 76 N. Y. 141; *Hempstead* v. *Lawrence,* 122 N. Y. Supp. 1040; *Morse* v. *Press Publishing Co.,* 71 App. Div. 351; *State* v. *Stepp,* 63 W. Va. 254; *Northwestern Traveling Men's Assn.* v. *Crawford,* 126 Ill. App. 468; *Negus* v. *Becker,* 143 N. Y. 303.) The covenants complained of do not render the property unmarketable because they in no way diminish the value of the property. (*Forster* v. *Scott,* 136 N. Y. 577; *Huyck* v. *Andrews,* 113 N. Y. 81; *Clement* v. *Burtis,* 121 N. Y. 708; *Riggs* v. *Purcell,* 66 N. Y. 193; *Gebhard* v. *Addison,* 87 App. Div. 380; *Ray* v. *Adams,* 44 App. Div. 173; *Wetmore* v. *Bruce,* 118 N. Y. 319.)

*Edward E. Sprague* for respondents. The restrictive covenants render the title unmarketable. (*Dieterlin* v. *Miller,* 114 App. Div. 40; *Heim* v. *Schworer,* 155 App. Div. 295; 187 N. Y. 543; *Ray* v. *Adams,* 44 App. Div. 173; *Goodrich* v. *Platt,* 144 App. Div. 771; *Van Schaick* v. *Lese,* 31 Misc. Rep. 610; *Kountze* v. *Helmuth,* 67 Hun, 343; *Raynor* v. *Lyon,* 46 Hun, 227; *Reynolds* v. *Cleary,* 61 Hun, 590.) There is no force in the appellant's contention that the covenants are not an incumbrance because Wendel was not shown to have owned any other land at the time he imposed them. (*Daley* v. *Brown,* 167 N. Y. 381; *Oliphant* v. *Burns,* 146 N. Y. 218; *Post* v. *Man. Ry. Co.,* 125 N. Y. 697; *Grunblatt* v. *Hermann,* 144 N. Y. 13; *T. G. & T. Co.* v. *Fallon,* 101 App. Div. 189.) The party wall agreement renders the title unmarketable. (*Hayden* v. *Pinchot,* 172 App. Div. 102; *Sebald* v. *Mulholland,* 155 N. Y. 455; *Crawford* v. *Krollpfeiffer,* 195 N. Y. 185.)

**104**    BULL *v.* BURTON.

CHASE, J. On December 27, 1911, the appellants entered into a contract with the respondents to sell to them certain real property in the city of New York known as No. 448 Fifth avenue. It now appears that one of the appellants' predecessors in title on July 8, 1859, conveyed a lot on Fifth avenue, including the real property in question, to another of appellants' predecessors in title, and included in the deed there is a covenant as follows:

" And the said party of the second part (the grantee) for himself, his heirs and assigns, doth hereby covenant to and with the said John D. Wendel (the grantor), his heirs, executors and administrators, that neither the said party of the second part nor his heirs or assigns shall or will at any time hereafter erect any buildings within forty feet of the front of said lots except of brick or stone with roofs of slate or metal and will not erect or permit upon any part of the said lots any slaughter house, smith shop, forge, furnace, steam engine, brass foundry, nail or other iron factory, or any manufactory of gun powder, glue, varnish, vitriol, ink or turpentine, or for the tanning, dressing or preparing skins, hides or leather, or any brewery, distillery, or any other noxious or dangerous trade or business."

The lot so conveyed in 1859 was prior to February 22, 1864, divided into three lots of which the lot now in question is one. On that day one Babcock owned the northerly one of said three lots and one Brady the southerly one of said three lots, being the lot in question, and Babcock and Brady owned the middle one of said lots as tenants in common. On February 27, 1864, said Brady and Babcock entered into an agreement in writing, which, among other things, contains the following provisions:

" *Second.* It is further covenanted, declared and agreed that all the lots of ground hereinbefore described (the three lots into which the lot conveyed in 1859 was

divided) are already subject to the covenant against
nuisances and regulating the character of improve-
ments to be made thereon, contained in a deed of convey-
ance from John D. Wendel and wife to Henry A.
Hurlbut (the deed of 1859 hereinbefore mentioned),
recorded in the office of the Register of the city of New
York and county of New York, in Liber 791 of Con-
veyances, at page 301.

" And it is further covenanted, declared and agreed,
that neither of the parties to these presents, or his or
their heirs or assigns, shall or will at any time hereafter
erect or use, or permit to be erected or used upon any of
the said lots of ground hereinbefore described, any
stable either public or private.

" *Third.* And whereas, the parties to these presents
are now erecting a wall which will stand half its width
on the northerly margin of the lot thirdly above described,
and the other half of the southerly margin of the lot
secondly above described, and also another wall which
will stand half of its width on the northerly margin of the
lot secondly above described, and the other half upon the
southerly margin of the lot first above described, which
walls are intended to be about seventy-two feet in depth
from the front to rear, and to be erected in all respects
according to the plans already prepared by Griffith
Thomas, architect. Now it is further mutually declared
and agreed that each of said walls shall be and remain a
party wall for the joint and equal use of the owners
from time to time of the respective lots on which such wall
shall stand; also that the owner from time to time of
either portion of either of said walls desiring to add
to his building may for that purpose and at his own
expense, extend such wall higher or to a greater depth
from the street, making such extension in substantial
manner and at least sixteen inches in thickness, provided
that if the owner of the other or adjoining house shall at
any time thereafter use such extended wall, he shall then

pay for one-half of so much as he shall so use, and the amount to be paid by him shall be the price or value at that time of one-half of the materials contained in the portion of the wall so used, and of the labor of laying them there, and such extended wall may be further extended by either party in like manner and with like mutual rights in respect to the same; and it is also further understood and agreed that whenever the half wall that stands on the southerly margin of the lot first hereinabove described shall be used or sold, the cost or value thereof shall belong and be paid to the parties aforesaid equally.

"*Lastly*, it is further covenanted, declared and agreed that all the covenants herein contained or referred to shall be construed to run with the said land and every part of it, and to bind, and also enure to the benefit of the heirs and assigns of said respective parties."

The question involved on this appeal is whether on the record before us the restrictions, agreements, regulations and covenants hereinbefore mentioned or any of them constitute an incumbrance of the real property described in the contract which justify the refusal of the respondents to carry out their contract to purchase the same.

A covenant in a deed by which the grantor, his representative, heirs and assigns, are prohibited from using specified materials in erected a building or buildings on the real property conveyed, and also prohibiting the use of the property for specified purposes does not make the title to such property unmarketable if the grantor, his representative, heirs and assigns, cannot use such materials in the erection of a building thereon or the property for the purposes mentioned because of some general statute or other law which is equally prohibitive. The covenant in the deed of 1859, so far as it relates to the materials that shall be used in the erection of a building within forty feet of the front of said lot, does not make the title to the lands in question unmarketable because the prohibition does not exceed reasonable

prohibitions by statute or ordinance. The possibility of a change in the statutes or ordinances so as to permit the use of building materials other than brick, stone, slate or metal and other materials fairly comprehended within such enumeration is upon the facts disclosed too remote for practical consideration.

An examination of the covenants in the agreement of 1864, so far as they relate to party walls, shows that they are confied to *the wall* in course of construction at the time the covenant was made. (*Devyr* v. *Schaefer*, 55 N. Y. 446.) There is no express covenant in it relating to rebuilding or repairing such wall. The right to extend the wall is confined to an extension of *the wall* then in course of construction.

It is held in this state that a covenant relating to an existing party wall is not an incumbrance upon the property. (*Hendricks* v. *Stark*, 37 N. Y. 106, 111.) The court in that case say: " It is true that the erection of a party wall creates a community of interest between the neighboring proprietors, but there is no just sense in which the reciprocal easement for its preservation can be deemed a legal incumbrance upon the property. The benefit thus secured to each is not converted into a burden by the mere fact that it is mutual and not exclusive."

When the state of things which results in a contract for a particular party wall ceases and the right to continue an obligation for a party wall as between the owners of the adjoining property is not provided for by contract the easements terminate. (*Partridge* v. *Gilbert*, 15 N. Y. 601; *Heartt* v. *Kruger*, 121 N. Y. 386.)

It is not contended by the respondents in this case that the *existing party wall* is an incumbrance to the real property in controversy. They say in their brief, referring to the trial of the action and the findings made by the referee, " No objection was made to the existence of the party wall nor have we at any time urged that

the agreement *so far as it relates to the existing wall* is objectionable."

They insist that the covenants for an extension and for a contribution to the expense of an extension run with the land and that because such covenants run with the land they are an incumbrance.

It appears from the record that the grantors of the respective parties to the agreement have each voluntarily erected a wall from about the end of the wall referred to in the agreement to the end of the lots respectively. Said walls are erected on either side of the boundary line and each is independent of the other, and they severally constitute the side wall of a building erected on the rear of the lots respectively. So far as appears from the record, therefore, the parties hereto have wholly, entirely and effectually abandoned the right of extending further into the lots the party wall which was being erected at the time when the agreement of 1864 was executed. Each party has built upon his lot, using such independent wall owned by him in severalty. (*Duncan* v. *Rodeeker,* 90 Wis. 1.) The wall and building on the property adjoining the lands in question were so erected prior to the agreement on which this action was brought, but the wall and building on the lot in question were built subsequent to the commencement of this action and before the trial thereof.

The right by covenant to extend the party wall higher than contemplated when the same was being erected and at the time the covenant was made did not add to the right that existed in connection with the maintenance of the party wall itself.

The parties interested in a wall so maintained unless restricted in its use can extend the same higher so long as the rights of the other in the party wall are not affected or endangered. (*Brooks* v. *Curtis,* 50 N. Y. 639.)

We do not for the reasons stated in the cases in this court hereinafter mentioned think that the covenant to

pay for one-half of the expense of increasing the height of the party wall as provided by the covenant, as an adjoining owner might use thereof, creates an incumbrance in this case. Whether such a contract is an incumbrance has been many times considered by this court and it is not necessary to restate the principles upon which the decisions have been placed. The respondents rely upon the decision of this court in *Mott* v. *Oppenheimer* (135 N. Y. 312). The decisions of this court sustaining the position of the appellants are *Cole* v. *Hughes* (54 N. Y. 444); *Scott* v. *McMillan* (76 N. Y. 141); *Hart* v. *Lyon* (90 N. Y. 663); *Brooks* v. *Curtis* (50 N. Y. 639); *Negus* v. *Becker* (143 N. Y. 303); *Sebald* v. *Mulholland* (155 N. Y. 455); *Crawford* v. *Krollpfeiffer* (195 N. Y. 185). In the last two cases mentioned the distinction between the *Mott* v. *Oppenheimer* case, in which the covenant was held to run with the land and constitute an incumbrance, and the cases similar in principle to the one now before us, was pointed out.

Restrictive covenants generally are broadly divided into three classes as stated by this court in *Korn* v. *Campbell* (192 N. Y. 490). The covenants in the deed of 1859 come within the second class mentioned by the court in that case. Its recognition in the agreement of 1864 of the covenants in the deed of 1859 did not enlarge the scope of the covenants. (*Korn* v. *Campbell, supra.*) If Wendel, the grantor, was not the owner of other contiguous or neighboring lands which he retained and for the benefit and protection of which the restrictive covenants were inserted, there is no one so far as appears from the record to enforce compliance with such covenants. It is asserted that Wendel at the time of the execution and delivery of the deed of 1859 was the owner of other contiguous real property for the benefit of which the covenants were made. At the trial it seems to have been assumed without formal proof that Wendel owned other lands contiguous to lands in controversy at the time of the

delivery of the deed. The respondents offer to show such title in this court. Evidence in this court to sustain the judgment can only be supplied on appeal when the matter is of record and cannot be answered or changed. (*People* v. *Flack*, 216 N. Y. 123, 129.) Evidence of the title of Wendel to other lands cannot be shown in this court because it could result in a controversy and not the mere supplying of an omission. We think, however, that it was assumed in this case, not only during the trial but at all times prior to the appeal to this court that Wendel was the owner of contiguous property for the benefit of which the restrictive covenants were inserted in the deed.

There is a restrictive covenant in the agreement between Babcock and Brady in 1864 relating to the erection of a stable, either public or private, which clearly inured to the benefit of the lot. Even if we assume, therefore, that Wendel owned no other lands contiguous to those in question, the judgment would have to be sustained because of the covenant in regard to a stable. All of the facts relating to this covenant are included in the findings and the conclusion to be reached therefrom is before this court for consideration.

The owner of real property is entitled as of right to the free use of the same. If he is unable to maintain a stable thereon, or maintain or permit to be maintained certain specified businesses, or any noxious or dangerous trade or business, he does not have complete dominion over his real property. His use thereof in that case is a restricted use. If an owner should in the language of the learned referee before whom this case was tried be " foolish enough to seek to violate " the covenants and attempt to use his lands for a stable, or for one of the businesses prohibited, he would subject himself to litigation and damages. An owner's use of his property in that case is restricted and circumscribed and his dominion thereof is not complete. The covenant in the deed of 1859 runs with the

land, and if it affects the land either in itself or in its value *or in the way in which it can be enjoyed,* it is an incumbrance.

The restrictive covenants in this case are more than covenants not to erect upon the premises any building or carry on any business " which shall or may cause or become a nuisance to others owning lands contiguous thereto." Such a covenant does not create a defect in the title. It binds the owner no further than he would be bound by law in the absence of a covenant. (*Clement v. Burtis,* 121 N. Y. 708.) A restrictive covenant in a deed should be construed strictly (*Duryea* v. *Mayor, etc., of N. Y.,* 62 N. Y. 592; *Kitchen* v. *Brown,* 180 N. Y. 414), but according to the intent of the parties to the deed. (*Munro* v. *Syracuse, L. S. & N. R. R. Co.,* 200 N. Y. 224.) The covenant under consideration if enforced will interfere with a right existing in the owner of the land. Any right existing in another to use the land, or whereby the use by the owner is restricted, is an incumbrance within the legal meaning of the term. (*Wetmore* v. *Bruce,* 118 N. Y. 319; *Forster* v. *Scott,* 136 N. Y. 577.) It affects and interferes with legitimate business, and business termed noxious and dangerous, although not *per se* a nuisance, and such interference constitutes an incumbrance. (*Dieterlen* v. *Miller,* 114 App. Div. 40; *Heim* v. *Schwoerer,* 115 App. Div. 295 [decision based on authority of *Dieterlin* v. *Miller, supra*]; affd., 187 N. Y. 543.)

Courts have recognized a distinction between an action to compel specific performance of *a contract* between parties for the purchase and sale of real property and *a bid* at a judicial sale. Where property is offered for sale under a judgment or order of the court and a person becomes a purchaser at such sale, the courts in certain cases have directed the completion of the purchase although defects are alleged in the title of the property that are of remote possibility and in any event not

affecting the market value of the property sold. (*Riggs v. Pursell,* 66 N. Y. 193; *Wetmore* v. *Bruce, supra.*)·

An order enjoining parties affected by a restrictive covenant has in special cases been withheld where it would be inequitable to so use the processes of the court, and that even in cases where an action for damages would be sustained. (*Trustees of Columbia College* v. *Thacher,* 87 N. Y. 311.)

If, however, a person enters into a contract for the purchase of real property he cannot be required to complete the purchase if its use is substantially restricted although such restriction in the ordinary market would not affect the price to be paid therefor. The following cases, viz., *McClure* v. *Leaycraft* (183 N. Y. 36); *Batchelor* v. *Hinkle* (210 N. Y. 243); *Jackson* v. *Stevenson* (156 Mass. 496); *Roth* v. *Jung* (79 App. Div. 1); *Deeves* v. *Constable* (87 App. Div. 352); *Schwarz* v. *Duhne* (118 App. Div. 105); *Schefer* v. *Ball* (120 App. Div. 880; affd., 192 N. Y. 589) and others which it is claimed hold in effect that the restrictive covenants in a deed should be generally ignored if the *locus in quo* has changed from a residential to a business district, do not so hold.

They do hold that a court of equity should not do inequity, and that if the granting of an injunction to enforce restrictive covenants will result in inequity it will be denied, and leave the plaintiff to his remedy at law. That is the rule fully established by *Trustees of Columbia College* v. *Thacher* (*supra*). The court speaking by Judge DANFORTH, referring to a court of equity, say, " It gives or withholds such decree according to its discretion in view of the circumstances of the case and the plaintiffs' prayer for relief is not answered, where, under those circumstances, the relief he seeks would be inequitable." (p. 317.)

The court further say: " In the case before us the plaintiffs rely upon no circumstance of equity but put their claim to relief upon the covenant and the violation

of its conditions by the defendant. *They have established, by their complaint and proof, a clear legal cause of action. If damages have been sustained, they must, in any proper action, be allowed.* But on the other hand the defendant has exhibited such change in the condition of the adjacent property and its character for use as leaves no ground for equitable interference, if the discretion of the court is to be governed by the principles I have stated, or the cases which those principles have controlled." (p. 319.)

The *McClure* case was an action to restrain the defendant from erecting an apartment house in alleged violation of a restrictive covenant. The Special Term dismissed the complaint. The judgment of the Special Term was reversed in the Appellate Division. This court modified the judgment of the Special Term so as " to declare that it is without prejudice to an action at law," and as thus modified affirmed it.

The *Batchelor* case was brought to enforce a restrictive covenant. After the making of the covenant the buildings in the neighborhood were entirely changed in character and the court held that the covenant should not be enforced in equity but that the plaintiff should be remitted to an action at law for her damages.

The *Jackson* case was a bill in equity brought to enforce the restrictions in a deed but on account of changed circumstances the court refused to grant the injunction but the bill was retained for the purpose of assessing the plaintiff's damages as in an action at law.

In the *Deeves* case it is held that the easement therein mentioned had been extinguished.

The *Roth, Schwarz* and *Schefer* cases were each to obtain injunctive relief against restrictive covenants and the rule stated in the *Columbia College* case was restated and enforced.

The court should not compel the specific performance of a contract to purchase real property when the purchaser

would be subject to an action at law for damages if restrictive covenants constituting incumbrances on the title should be violated.

The judgment of the Appellate Division should be affirmed, with costs.

McLAUGHLIN, J. (dissenting). On December 27, 1911, the parties entered into a contract by which the plaintiffs agreed to sell, and defendants to purchase, a lot on the westerly side of Fifth avenue in the city of New York, between Thirty-ninth and Fortieth streets, known as No. 448. The lot has a frontage of 33 feet on the avenue and is 110 feet deep. The contract price was $650,000, of which $25,000 was paid at the time the contract was signed. On the day fixed for passing title, defendants refused to complete the purchase, on the ground that the title tendered was unmarketable, in that it was incumbered by certain restrictive covenants not mentioned in the contract. This action was then brought to compel them to specifically perform. The issues raised by the pleadings were sent to a referee to hear and determine. He made a report in favor of defendants, upon which judgment was entered, which was unanimously affirmed by the Appellate Division. Plaintiffs appeal to this court.

The referee found, as a fact, that plaintiffs' title was derived from one John D. Wendel, through a deed of conveyance bearing date the 13th of September, 1859; that this conveyance contained the following covenant on the part of the grantee: " And the said party of the second part, for himself, his heirs and assigns, doth hereby covenant to and with the said John D. Wendel, his heirs, executors and administrators, that neither the said party of the second part nor his heirs or assigns shall or will, at any time hereafter, erect any buildings within forty feet of the front of said lots, except of brick or stone, with roofs of slate or metal, and will not erect or permit upon any part of said lots any slaughter house, smith

shop, forge furnace, steam engine, brass foundry, nail or other iron foundry, or any manufactory of gun powder, glue, varnish, vitriol, ink or turpentine, or for the tanning, dressing or preparing skins, hides or leather, or any brewery, distillery or any other noxious or dangerous trade or business; " that on the 27th of February, 1864, title to the lands vested in one Brady, who was also at that time the owner of an undivided half of the lot of land next adjoining on the north fronting 32 feet 9 inches on Fifth avenue; that on that day Brady entered into an agreement with one Babcock, who at that time was the owner of the remaining undivided half of the last-mentioned lot and was also the owner of the next adjoining lot fronting 33 feet on Fifth avenue; that this agreement contained the following provision: " It is further covenanted, declared and agreed that all the lots of ground hereinbefore described are already subject to the covenant against nuisances and regulating the character of improvements to be made thereon contained in a deed of conveyance from John D. Wendel and wife to Henry A. Hurlbut * * *. And it is further covenanted, declared and agreed that neither of the parties to these presents or his or their heirs or assigns shall or will, at any time hereafter, erect or use, or permit to be erected or used upon any of the said lots of ground hereinbefore described, any stable either public or private." Then followed provisions as to a party wall, its construction and use, which it seems to me unnecessary here to consider.

The referee also found as a fact that at the time of the conveyance from Wendel to Hurlbut, in 1859, and the agreement between Brady and Babcock, in 1864, Fifth avenue in the city of New York, from Twenty-third to Forty-fourth streets, was used and occupied as a residential district and the most valuable use to which the land on said avenue could be devoted during said period was for residences; that beginning with the year

1903 the character and use of the buildings on Fifth
avenue between the streets named commenced to change,
the residential buildings being altered for business use,
or being torn down and new buildings erected, suitable
for business, in place thereof; that such changes con-
tinued until the year 1911, at which time, and at the
time of the trial of the action, the character of the
improvements on the entire avenue between said streets
had undergone a complete change and the only profitable
use that could be made of the land fronting on the
avenue was for business purposes; that the value of the
land had greatly increased since the conveyance by
Wendel and the agreement between Brady and Babcock,
which increase was due to the change in the character
of the buildings and the use to which the same were
put; that the existence of the party wall was not a burden
upon the land, no matter what might be the character
of the improvements erected, but on the contrary could
be used advantageously as part of the side wall of any
structure that might be erected thereon; that it did not
diminish the market value of the land; and so much
of the covenant contained in the deed from Wendel as
provided against the erection of a slaughter house, smith
shop, furnace, etc., did not diminish the respective
market value of the land in question because it was far
too valuable from an economic point of view to be
devoted to any such use and because of such value no
person would be likely to devote the premises to any
of the uses forbidden. Nor did the agreement between
Brady and Babcock as to the erection of a stable
diminish, in any respect, the market value for a similar
reason.

As conclusions of law he found that none of the cove-
nants in the deed from Wendel to Hurlbut, or the agree-
ment between Brady and Babcock, were incumbrances
upon the land or constituted a valid objection to the
title tendered, except the one in the deed from Wendel

to Hurlbut by which the grantee agreed not to erect or permit upon the lots any slaughter house, smith shop, forge, furnace, etc., and as to that he found such covenant did constitute an incumbrance and was a valid objection to the title.

In view of the unanimous affirmance by the Appellate Division of these findings and conclusions of law, the question is squarely presented whether the covenant in the deed from Wendel to Hurlbut in 1859, not to erect or permit to be erected on the lot in question any slaughter house, etc., constituted a valid objection to the title and justified the defendants in rejecting it.

I am of the opinion it did not.   There is not a particle of proof in the record, as I read it, nor was it assumed at the trial, that Wendel, at the time he made the conveyance in 1859, was the owner of other contiguous or neighboring lands which he retained and for the benefit and protection of which the covenant and restriction were inserted.   If he were not, then there is no one, so far as appears from the record, to enforce compliance with such covenant.   It was, at most, a personal covenant and its recognition in the agreement of 1864 did not enlarge its scope.   (*Korn* v. *Campbell*, 192 N. Y. 490.) Specific performance should have been decreed upon this ground.   Respondents, recognizing the force of this contention upon the argument before this court, sought to supply this proof, which we held could not be done. Evidence to sustain a judgment on appeal to this court can only be supplied when the matter is of record and cannot be answered or changed.   (*People* v. *Flack*, 216 N. Y. 123.)   To permit evidence to be supplied as suggested by respondents would introduce an issue which this court could not determine.

But even assuming that Wendel did have other lands for the benefit of which this restrictive covenant was inserted in his deed of conveyance, I am still of the opinion that specific performance should have been

decreed. When this deed of conveyance was made, the *locus in quo* was devoted to residential purposes. It has ceased to be such and at the time the parties to this action entered into their agreement substantially all of the buildings on either side of the avenue between Thirty-fourth and Forty-fourth streets were devoted exclusively to business purposes. The character of the buildings on the avenue has entirely changed. The purpose of the covenants, by reason of such change, can no longer be accomplished. If all the restrictions imposed should be strictly enforced it would not restore to the locality its residential character. The only effect would be to lessen the value of the property, without conferring a corresponding benefit upon any one. The property in the locality has, by reason of the change, become enormously valuable. The contract price of the lot in question was upwards of $179 a square foot — nearly $19,700 a foot on the avenue. Under such circumstances, it seems to me the height of absurdity to claim that a restrictive covenant not to erect a slaughter house, blacksmith's shop, stable, or manufactories of the kind specified, is an incumbrance of such a character as to prevent the passing of good title.

The case, in principle, therefore, is brought at least within the spirit of the rule laid down in *Columbia College* v. *Thacher* (87 N. Y. 311); *McClure* v. *Leaycraft* (183 N. Y. 36), and *Batchelor* v. *Hinkle* (210 N. Y. 243). (See, also, *Jackson* v. *Stevenson*, 156 Mass. 496; *Roth* v. *Jung*, 79 App. Div. 1; *Deeves* v. *Constable*, 87 App. Div. 352; *Schwarz* v. *Duhne*, 118 App. Div. 105; *Schefer* v. *Ball*, 120 App. Div. 880; affd., 192 N. Y. 589.)

In determining whether a court of equity will compel the observance of covenants restricting the use and occupation of real estate, each case must necessarily depend upon its particular facts. Upon the facts found in this case, I think it would be unjust and inequitable to hold the title of the lot in question unmarketable.

The judgments appealed from, therefore, should be reversed and a new trial ordered, with costs to abide event.

COLLIN, HOGAN and CRANE, JJ., concur with CHASE, J., for affirmance; HISCOCK, Ch. J., and CUDDEBACK, J., concur with MCLAUGHLIN, J., for reversal.

Judgments affirmed.