VAN VLIET & PLACE, INC., Appellant, v. THOMAS J. GAINES, as Executor of MARTHA A. GAINES, Deceased, Respondent.

(Argued June 20, 1928; decided July 19, 1928.)

*Theodore E. Larson* for appellant. Defendant's title was defective and unmarketable. The defect was incurable and of such a nature that a reasonably prudent purchaser could not be expected to waive it. (*Dieterline* v. *Miller*, 114 App. Div. 40; *Rowland* v. *Miller*, 139 N. Y. 93; *Weinburgh* v. *Sanders*, 204 App. Div. 409; *Goodrich* v. *Pratt*, 114 App. Div. 771.) The plaintiff had earned his commissions by introducing a purchaser ready, able and willing to buy upon the terms previously stated by defendant. (*Smith* v. *Peyrot*, 201 N. Y. 210; *Gilder* v. *Davis*, 137 N. Y. 504; *Davidson* v. *Stocky*, 202 N. Y. 423; *Tanenbaum* v. *Boehm*, 202 N. Y. 293; *Tyler* v. *Seiler*, 76 Misc. Rep. 187; *Cerny* v. *McNamara*, 125 Misc. Rep. 827.)

*John J. Crawford* for respondent. Upon the facts of the present case the defendant, not having had her attention directed to the matter, was under no obligation to apprise the broker of the restrictions, and was guilty of no fraudulent concealment. (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Peace* v. *Ross*, 123 App. Div. 611; *Hausman* v. *Jacobs*, 120 Misc. Rep. 61; *Upington* v. *Corrigan*, 151 N. Y. 143; *Ellis* v. *Horrman*, 90 N. Y. 466.)

*Harold J. Treanor* for Real Estate Board of New York, Inc., *amicus curiæ*. The principal cannot defeat the

broker's right to compensation after complete performance is tendered by changing the terms on which the property was offered. (*Moses* v. *Bierling*, 31 N. Y. 462; *Gilder* v. *Davis*, 137 N. Y. 504; *Tanenbaum* v. *Boehm*, 202 N. Y. 293; *Davidson* v. *Stocky*, 202 N. Y. 423; *McQuillen* v. *Carpenter*, 72 App. Div. 595; *Cerny* v. *McNamara*, 125 Misc. Rep. 827; *Levy* v. *Ruff*, 4 Misc. Rep. 180.) No duty or obligation is imposed upon the broker to make inquiry of the owner as to his title or the condition of his title. (*Schrag* v. *Cohen*, 125 Misc. Rep. 258; *Cerny* v. *McNamara*, 125 Misc. Rep. 827; *Tarbell* v. *West*, 86 N. Y. 280; *Seely* v. *Seely*, 164 App. Div. 650.) The title in the instant case is unmarketable. (*Gibert* v. *Peteler*, 38 N. Y. 165; *Upington* v. *Corrigan*, 151 N. Y. 143.)

*Bruce R. Duncan* for Brooklyn Real Estate Board, *amicus curiæ*. It is not the duty of a broker to inquire of the owner as to the existence of any conditions, covenants or other matters affecting the title of the property which he is employed to sell. (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Smith* v. *Peyrot*, 201 N. Y. 210; *Tanenbaum* v. *Boehm*, 202 N. Y. 293; *Davidson* v. *Stocky*, 202 N. Y. 423; *Kalley* v. *Baker*, 132 N. Y. 1; *Gilder* v. *Davis*, 137 N. Y. 504; *Cusack* v. *Aikman*, 93 App. Div. 579; *King* v. *Knowles*, 122 App. Div. 414; *Cerny* v. *McNamara*, 125 Misc. Rep. 827.)

O'BRIEN, J. Martha A. Gaines owned real property on the corner of Jane street and Eighth avenue, in the borough of Manhattan. In the year 1923 it was in the market and the president of plaintiff, which is a real estate broker, approached the owner and drafted a letter which he addressed to his corporation and which was signed by Mrs. Gaines. In this letter she authorized plaintiff to act as her broker and named her terms of sale. No mention was made concerning any restrictive covenant on the premises. Within the stipulated time, plaintiff

procured a purchaser who was ready to buy on the terms and conditions stated in the owner's letter to the broker, but when the time for closing arrived, a covenant embraced in a deed of the premises executed in the year 1834 and unknown both to the owner and to the broker caused the title company to refuse to insure the title or to loan money on a mortgage and caused the prospective purchaser to refuse to take title. This covenant provides that if at any time the grantee, his heirs or assigns should permit upon the premises a cemetery, slaughter house, manufactory of gunpowder, glue, varnish, vitriol, turpentine, a tannery, blacksmith shop, forge or furnace or any other occupation usually deemed unwholesome, noxious or offensive, " then said premises and every part thereof shall revert to said party of the first part and their heirs, * * *."

The possibility of reverter included in this covenant renders the title unmarketable. In view of the existence of statutes and ordinances which prohibit the maintenance of most of the objectionable structures enumerated in the deed, the ordinary covenant against nuisances has in recent years lost much of its force. Yet, even in populous cities, a blacksmith shop or a forge has not been wholly outlawed. The expression " any other occupation usually deemed * * * offensive " has been interpreted to include many which do not amount to a nuisance. (*Rowland* v. *Miller*, 139 N. Y. 93.) The improbability that facts may some time arise to call the possibility of reverter into actual being will not create marketability in a title where it does not otherwise inhere. The contingencies are not so improbable that they can be totally disregarded. We cannot say as matter of law that they are mere theoretical possibilities. They are no more remote than the possibility that, after the adoption of the Eighteenth Amendment and the enactment of the prohibition enforcement act, a purchaser of realty would wish to open a drug store on the premises and sell liquor in accordance

with the law. (*Isaacs* v. *Schmuck*, 245 N. Y. 77.) The record does not tell us whether these residential premises are located in a zone restricted to residential use. If they are so situated, changes may occur by which the district may be relegated to a business or mixed use. The possibility of a change in the zoning ordinance cannot be said to be too remote for practical consideration. (*Bull* v. *Burton*, 227 N. Y. 101; *Isaacs* v. *Schmuck*, *supra*.) The penalty for a violation of this covenant goes beyond payment of money or subjection to an injunction; the title reverts to the heirs of the vendors of 1834. This is not the ordinary covenant against nuisances. It seems to be quite unusual. A prudent purchaser may not be labelled as unduly cautious when he refuses such a title. He would encounter difficulty in obtaining a loan or in conveying title. He would be under no obligation to assume risks of the drastic nature manifested by this covenant. A reasonable doubt as to the title is sufficient to authorize its rejection. (*Moore* v. *Williams*, 115 N. Y. 586.)

The question in the case most closely litigated relates to the broker's duty to investigate the title. Both owner and broker acted in good faith; neither was aware of the covenant nearly a century in age. The established rule in this State does not impose any obligation upon the broker to become acquainted with the title. This broker performed its part of the agreement when it procured a purchaser ready to buy according to the terms offered in the owner's letter. In *Smith* v. *Peyrot* (201 N. Y. 210) the rule is thus stated: " It has been settled by repeated decisions of this court that where a broker is employed to find a purchaser for real estate, and procures one ready, able and willing to pay, he is entitled to his commissions although the sale is prevented by defects in the vendor's title (*Knapp* v. *Wallace*, 41 N. Y. 477; *Kalley* v. *Baker*, 132 id. 1; *Gilder* v. *Davis*, 137 id. 504)." Mrs. Gaines was unfortunate in failing to know

of the ancient covenant in her chain of title. The broker was not bound to know it and, having performed the services for which it was employed, it is entitled to compensation.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in the Appellate Division and in this court.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN and KELLOGG, JJ., concur; CRANE, J., not sitting.

Judgment accordingly.