TENNY ESTATES, INC., Plaintiff, v. SAFAN REALTY CORPORATION Defendant.

City Court of New York, Special Term, New York County, June 14, 1940.

*Karl Propper*, for the plaintiff.

*Fred S. Weitzner*, for the defendant.

RYAN, J. This is an action to recover a down payment of $2,000 on a contract of sale of real property, together with the reasonable cost of title examination. Plaintiff moves for summary judgment under Civil Practice Rule 113. Plaintiff rejected the deed when tendered by the defendant and contends that the rejection was justified because the title was incumbered by a restrictive covenant not specified in the contract of sale. The restrictive covenant contained in an instrument of conveyance, dated December 1, 1852, and recorded March 26, 1853, and also in instruments of conveyance of the premises through the chain title to the present time, reads as follows: " Neither the said purchaser, his heirs or assigns shall thereafter erect or permit on the premises hereby granted or any part thereof any brewery, distillery, sugar house foundry, blacksmith shop, slaughter house, livery or cow stable, soap candle vitriol glue ink turpentine or leather factory, or any other dangerous noxious or offensive establishment whatsoever, and it is understood that this covenant shall run with the said premises and that it shall be lawful not only for the said Martin, his heirs or assigns, but also for the owner or owners of any land laid down on said map to institute and prosecute any proceedings at law or in equity against the person or persons violating the same, it being understood that this covenant is not to be enforced personally against said vendee, his heirs or assigns unless he or they being the owner or owners of the premises shall personally violate the same." The property involved consists of land improved with a multiple dwelling, an apartment house, located on West One Hundred and Seventy-fifth street, in the block west of Broadway, in the borough of Manhattan, city of New York.

By the zoning resolutions of the city of New York in effect on the date of the contract real property is divided into five different uses, in accordance with the districts in which they are placed, as follows: (1) Residence districts; (2) business districts; (3) retail districts; (4) restricted retail districts, and (5) unrestricted districts. This property is in a residence district. The contract of sale provides that the premises be sold subject to " Building restrictions and regulations in resolutions or ordinance adopted by the Board

of Estimate and Apportionment of the City of New York, July 25, 1916, and amendments and additions thereto now in force."

At this time the property embraced in the contract of sale could only have been used for residential purposes. Was plaintiff justified in rejecting the title because of the existence of the restrictive covenant above quoted?

In *Isaacs* v. *Schmuck* (245 N. Y. 77) a similar question was considered but not decided, the case turning instead upon a restriction against the use of premises for the sale of " wine or malt or spirituous liquor." What was said by CARDOZO, Ch. J., with reference to covenants against noxious forms of business is important. " The conclusion thus reached makes it unnecessary to determine the effect of the restriction against noxious forms of business. Such a covenant approaches closely to a covenant against nuisances, even if somewhat broader (*McCarty* v. *Natural Carbonic Gas Co.*, 189 N. Y. 40; *Bull* v. *Burton*, 227 N. Y. 101). A covenant similar but not identical, was held in *Bull* v. *Burton* (*supra*) to constitute an encumbrance, though the property affected was located on Fifth avenue in the city of New York with the result that the use for any prohibited purpose was violently improbable. The decision in that case was reached by a closely divided court before the passage of the zoning laws. The effect of the covenant was to impose a present limitation upon the dominion of the owner, if moved by whim or fancy to dedicate his lots to a bizarre or freakish use. Here there are no present limitations beyond those imposed by law, and no prospect of any hereafter, unless prospect is extended to include a distant possibility. A possibility may be so distant that the clearness of a title will not be clouded by its presence. For this also *Bull* v. *Burton* may be cited as authority. One of the covenants in that case was against the erection of any building not made of brick or stone. A statute or ordinance contained a like restriction. The court dismissed as negligible the possibility of legislation whereby the provisions of the law would become less stringent than the provisions of the covenant (pp. 106, 107). By the zoning ordinance of the village of Lawrence the property in question, described in the answer as located in a high-class residential neighborhood, has been placed in a residence district. To make a noxious use permissible, the land would have to be taken out of a residence district, and even out of a business one, and put into a district wholly unrestricted. Some changes of the ordinance, *e. g.*, from a residence to a business district, are within the bounds of reasonable probability (*Kimball Co.* v. *Fox*, 120 Misc. Rep. 701; 209 App. Div. 812; 239 N. Y. 554). We leave the question open whether changes wholly revolutionary, transformations so remote

and speculative as to be little more than theoretical possibilities, may be disregarded as negligible in determining the quality of the title (*Bull* v. *Burton, supra,* 106, 107; *Cambrelleng* v. *Purton,* 125 N. Y. 610, 616)."

The above case contains references to the principal cases touching upon the question decided up to that time. (*Bull* v. *Burton,* 227 N. Y. 101, and *Kimball Co.* v. *Fox,* 120 Misc. 701; affd., 209 App. Div. 812; affd., 239 N. Y. 554.)

In *Kimball Co.* v. *Fox* (*supra*) it was pointed out by Mr. Justice FRANCIS MARTIN at Special Term that a "zoning resolution may be changed and if neighboring owners desire it may readily be changed." He said: "Applications for such changes are being made and considered and in some instances granted from time to time. Such changes are expressly provided for in section 23 of the Building Zone Resolution. * * * An application for such a change might be made and granted at any time, and even as to a mere portion of the street upon which the land is located." The direct applicability to the case in hand of *Van Vliet & Place, Inc.,* v. *Gaines* (249 N. Y. 106) is doubtful. In the first place, that case involved the question of a broker's right to recover commissions after he had procured a purchaser who was ready to buy on the terms stated by the owner to the broker, but who refused to take title when a restrictive covenant against noxious businesses was found, which had not been disclosed by the owner to the broker. Secondly, the restrictive covenant in that case contained a provision for reverter to the original grantor in the event of its violation. Although the case is not controlling here because the question presented here was not decided, what was said by O'BRIEN, J., requires consideration: "The record does not tell us whether these residential premises are located in a zone restricted to residential use. If they are so situated, changes may occur by which the district may be relegated to a business or mixed use. The possibility of a change in the zoning ordinance cannot be said to be too remote for practical consideration. (*Bull* v. *Burton,* 227 N. Y. 101; *Isaacs* v. *Schmuck, supra.*) The penalty for a violation of this covenant goes beyond payment of money or subjection to an injunction; the title reverts to the heirs of the vendors of 1834. This is not the ordinary covenant against nuisances. It seems to be quite unusual. A prudent purchaser may not be labelled as unduly cautious when he refuses such a title. He would encounter difficulty in obtaining a loan or in conveying title. He would be under no obligation to assume risks of the drastic nature manifested by this covenant. A reasonable doubt as to the title is sufficient to authorize its rejection. (*Moore* v. *Williams,* 115 N. Y. 586.)" (249 N. Y. 106, 110.)

*O'Hara* v. *Bronx Consumers Ice Co.* (254 N. Y. 210) was also an action by a broker to recover for commissions in circumstances like those in *Van Vliet & Place, Inc.,* v. *Gaines* (*supra*). The purchaser procured by the broker refused to take title because the premises were incumbered with a restrictive covenant providing that the owner of the property " will not carry on or permit to be carried on upon said premises any noxious, offensive or dangerous trade or business." The court said, by HUBBS, J.: " The covenant in question constituted a restriction on the title which justified the prospective purchasers in refusing to go on with the contract. The title was unmarketable. (*Bull* v. *Burton,* 227 N. Y. 101; *Isaacs* v. *Schmuck,* 245 N. Y. 77.)" (254 N. Y. 210, 213.) It will be observed that in the case at bar the restrictive covenant contains a provision against the maintenance of " any other dangerous, noxious or offensive establishment whatsoever." This is rather a broad provision. I think that it is sufficient to render the title unmarketable. Residential districts in the city of New York frequently deteriorate or change into business or other districts. The possibility that the neighborhood, distant from the center of the city in which the premises here involved are located, may be opened to uses forbidden by the restrictive covenant is not so remote that the purchaser should be required to take title. The purchaser had contracted for a title free from any such private restrictions. The restrictions imposed by the zoning ordinance are subject to modification or abrogation. The private restrictions are rigid and inflexible.

It may be that the question decided here has not been completely answered by the authorities above considered. However, it seems to me that the deed which was tendered, containing the restrictive covenant, was not in accordance with the contract. The purchaser could, if he chose, be extremely cautious; he could take into account distant possibilities, even those which were remotely distant. If the court were to say that he was over-careful it would, in effect, be rewriting the contract of sale.

The plaintiff's motion for summary judgment is granted. The plaintiff may have judgment for the return of the down payment and an assessment to determine the reasonable cost of title examination. Order signed.