ALAN R. KING & another[1] *vs.* DAWN STEPHENS & another.[2] May 13, 1980. 1. The judge erred in entering summary judgment for the plaintiffs in their action to recover the amount of a deposit ($3,500) paid to the seller of a parcel of land, in which they alleged failure to deliver a "good and clear record and marketable title thereto free from encumbrances." The judge in his memorandum of decision ruled that the title to the land was not clear on the record, based on the fact, revealed by the parties' pleadings and affidavits, that two deeds in the chain of title were entered in reverse order in the books of the registry of deeds. By a deed dated February 2, 1891, Philip Ober conveyed the locus to his sons Andrew and William as tenants in common. By a deed dated October 2, 1894, William conveyed all his interest in the locus to Andrew. By a deed dated October 5, 1894, Andrew conveyed a one-half interest in the locus to

[1] Marie L. King.
[2] Donald Booker, Stephens' attorney.

William, but reserved therein a certain lot of land. By a deed dated March 30, 1897, Andrew conveyed his remaining one-half interest to William, who thus owned the property outright. The October 2 and October 5 deeds were both recorded on October 6, 1894, at 11:45 A.M., but were entered in reverse order in the registry of deeds' books. It is the out-of-sequence entry of those two deeds which created, according to the judge, the cloud on the title. The judge stated that "[n]either the fact that after the recording of the March 30, 1897, deed all subsequent takers considered W[illiam] Ober to be the owner of the entire fee nor the obvious inference that the October 5, 1894, and October 2, 1894, [deeds] were misrecorded inadvertently, overcomes the fact that an examination of the books of the Registry of Deeds reveals an obvious defect in the record title to the property."

In determining whether the recording of the two deeds out of sequence constitutes a cloud on record title, our inquiry is focused upon the meaning of the words "good and clear record title." In *O'Meara* v. *Gleason*, 246 Mass. 136, 138 (1923), "good and clear record title" was defined as "a title which on the record itself can be again sold as free from obvious defects, and substantial doubts." Such title "rests on the record alone, which must show an indefeasible unencumbered estate." *Id.* at 138. We think there can be no doubt that the record here reveals an "indefeasible unencumbered estate" in William Ober as of March 30, 1897, and hence, a "good and clear record title." The problem presented is not one of priority as between two conflicting, successive conveyances to bona fide purchasers, or persons claiming under them, of the same legal interest in land, and thus is not a problem to be resolved by application of the recording statute, G. L. c. 183, § 4. The deeds in William Ober's chain of title were valid as between William and Andrew when delivered, and were valid as against all other persons when the deeds were recorded (there being no conflicting claims in the record for the legal interests being conveyed). A deed is considered to be recorded when it is noted by the recording officer as having been received for recording, if the recording officer "places upon it his certificate that it has been so received, even though he afterwards fails in his duty by recording it inaccurately . . . or even by altogether suppressing it from the records, yet in contemplation of law the whole world has constructive notice of it, just the same as if it had been accurately copied in full upon the records." *Gillespie* v. *Rogers*, 146 Mass. 610, 612 (1888). The entry of two deeds in William Ober's chain of title out of chronological sequence does not change the result. As one commentator has noted, "Human fallibility is bound to account for some instruments either being never transcribed, or transcribed in a wrong book. Some courts stress the fact that the recording grantee has done all that he can do, and give him the benefit of recordation in these circumstances." 6 Powell, Real Property par. 918, at 298.2 (Rohan ed. 1979). See *Sykes* v. *Keating*, 118 Mass. 517 (1875).

2. The parties' pleadings and affidavits raise genuine issues of material fact (*Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553 [1976]) with regard to the defendants' alleged failure to secure a State inheritance tax waiver (see G. L. c. 65, § 1, as amended through St. 1961, c. 403), and with regard to the question whether this alleged defect was brought to the defendants' attention prior to or at the time of the closing. The judge in his memorandum of decision deemed this argument waived by the plaintiffs at oral argument, but in a subsequent memorandum, dated June 26, 1978, noted that upon review of the "recorded transcript" of the oral argument, it appeared that "[t]he issue of whether the plaintiff[s] waived the . . . argument . . . is ambiguous." The judge declined to decide "the legal significance of the plaintiff[s'] maintaining [their] motion for summary judgment in view of [their] apparent agreement that there were factual matters in disagreement on issue one [the tax waiver issue] since the court's resolution of issue two [the sequence of deeds issue] allowed summary judgment." We conclude that disputed issues of fact exist.

3. The judgment is reversed and the case is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*

*James T. Ronan* for the defendants.
*Alfred C. Walton* (*Kenneth A. Currie* with him) for the plaintiffs.