NANCY J. COONS *vs.* WARREN CARSTENSEN & another.[1]

Middlesex.  November 9, 1982. — March 10, 1983.

Present: GRANT, ROSE, & KASS, JJ.

*Contract*, For sale of real estate. *Real Property*, Record title, Encumbrance. *Words*, "Good and clear record title."

A restrictive agreement between the owners of a parcel of land and a land conservation trust, providing for preservation of the wetland portion of the parcel in its natural state, was an encumbrance which prevented the owners from conveying "good and clear record title," notwithstanding the circumstances that use of the wetland would be subject to regulation under G. L. c. 131, § 40, even if the restriction did not exist, and that the owners had been induced to enter the restrictive agreement by provisions of St. 1961, c. 579, § 3, which permitted the wetland to be taken by eminent domain if the owners did not place such a restriction on its use. [433-436]

CIVIL ACTION commenced in the Superior Court Department on July 17, 1979.

The case was heard by *Mitchell, J.*, on a motion for summary judgment.

*Joseph J. Leghorn (Robert T. Gill* with him) for the defendants.

*Barbara L. Moore (Thomas J. Sartory* with her) for the plaintiff.

KASS, J.  Can an owner of land encumbered by a restrictive agreement deliver good and clear record title if public law imposes substantially similar limitations upon the manner in which the land may be used?

By reason of St. 1961, c. 579, § 3, the Carstensens, who own 12.75 acres[2] bordering the Sudbury River in Lincoln,

---

[1] Evelyn Carstensen.

[2] Their holding may have been larger, but 12.75 acres were the subject of the purchase and sale agreement about which the parties dispute.

faced an uneasy choice. That statute authorized the Commissioner of Natural Resources to acquire approximately 1,000 acres of the marsh and land along the river as lay "at or below the [120-foot] contour interval above mean sea level," unless the owner preempted the possible taking by subjecting the land to a conservation restriction. More specifically, in order to be immune from eminent domain proceedings, it was necessary for an owner to convey in fee, or to encumber by restrictive agreements, easements or other limitations to limit use of the wetland, in the language of the statute, "to uses which will, in so far as practicable, preserve the same in its natural state, in favor of . . . the Lincoln land conservation trust, . . . the Secretary of the Interior of the United States, or . . . in favor of the commissioner of natural resources." The Carstensens chose the preemption alternative and, on August 15, 1962, executed an agreement with the Lincoln land conservation trust restricting the wetland portion of their property to uses which would preserve it in its natural state.[3]

Some sixteen years later, on September 28, 1978, the Carstensens entered into a purchase and sale agreement[4] with Coons to sell for $400,000 their land and a single family house on it. Under § 4 of the agreement, the Carstensens promised to convey "a good and clear record and marketable title," free from encumbrances except for those specifically noted in the agreement. The specified encumbrances did not include the restrictive agreement with the Lincoln land conservation trust. Coons, the buyer, declined to take a conveyance subject to the restrictive agreement and demanded return of her $40,000 deposit. The Carstensens refused to return the deposit, provoking this action by Coons. Her motion for summary judgment was

---

[3]The restrictive agreement permitted the construction and maintenance of a well and necessary pumphouses and boathouses, boat landings and docks.

[4]The agreement was on a Greater Boston Real Estate Board form, as revised in 1970.

allowed and the Carstensens, the sellers, have appealed from the judgment which thereupon entered. We affirm.

Good and clear record title "rests on the record alone, which must show an indefeasible unencumbered estate." *O'Meara* v. *Gleason*, 246 Mass. 136, 138 (1923). If extrinsic evidence, i.e., beyond the record, is required to support the title, it may be marketable, but it is not good and clear record title. See also *Tramontazzi* v. *D'Amicis*, 344 Mass. 514, 516-517 (1962); *King* v. *Stephens*, 9 Mass. App. Ct. 919, 920 (1980); Park, Real Estate Law §§ 951 & 953 (2d ed. 1981). It is the word "record" which gives the phrase "good and clear record title" distinct meaning in conveyancing. A "clear title," unmodified by the word "record," has the same connotation as "marketable title," i.e., it "may be shown by oral or other evidence outside the record to be marketable beyond any reasonable doubt." *Cleval* v. *Sullivan*, 258 Mass. 348, 351 (1927), quoting *Morse* v. *Stober*, 233 Mass. 223, 226 (1919).

There is no doubt that the restrictive agreement with the Lincoln land conservation trust is an encumbrance. Indeed, protection from acquisition by the Commissioner of Natural Resources was afforded under the language of St. 1961, c. 579, § 3, to property "*encumbered* by restrictive agreements . . . which will limit use of such marsh or land" (emphasis supplied). In all events, building or use restrictions are encumbrances. *Ayling* v. *Kramer*, 133 Mass. 12, 13-14 (1882). *Locke* v. *Hale*, 165 Mass. 20, 21-23 (1895). *Gallison* v. *Downing*, 244 Mass. 33, 36 (1923). Park, Real Estate Law § 953 (2d ed. 1981).

The defendants, however, invite us to carve an exception, announced in some jurisdictions, that a private restriction on use is not an encumbrance if it imposes limitations no greater than those imposed by public law. So, for example, in *Bull* v. *Burton*, 227 N.Y. 101, 106-107 (1919), a restriction in the chain of title to property on Fifth Avenue in New York city which limited construction to buildings of brick or stone with roofs of slate or metal was thought to be so consistent with equally prohibitive applicable ordinances that the restriction did not make the title *unmarketable*.

Although the word "unmarketable" was used, the question which the court posed for itself was whether the restrictions in the title "constitute an incumbrance." That the limiting statutes or ordinances might be changed was considered by the court "too remote for practical consideration."[5] *Id.* at 107. Thereafter, courts in New York and elsewhere became skeptical about the eternal immutability of public law and took into account that land use regulations might, in fact, change. See *Van Vliet & Place, Inc.* v. *Gaines*, 249 N.Y. 106, 110 (1928); *Stauss* v. *Kober*, 51 So.2d 121, 123-124 (La. Ct. App. 1951).

In another line of cases, courts have been unwilling to read private restrictions as overlapping, or identical to, public use limitations. See, e.g., *George* v. *Colvin*, 98 Cal. App. 2d 57, 62-63 (1950); *Wheeler* v. *Sullivan*, 90 Fla. 711, 716-717 (1925); *Barber Pure Milk Co.* v. *Goldin*, 218 So. 2d 409, 412-413 (Miss. 1969); *Isaacs* v. *Schmuck*, 245 N.Y. 77, 82-83, 86 (1927); *Lasker* v. *Patrovsky*, 264 Wis. 589, 598-599 (1953). See generally Annot., 39 A.L.R.3d 362, 408 (1971).

Upon analysis, the opinions discussed in the two preceding paragraphs pay lip service to the principle which the defendants press, but they do so largely in the context of considering whether title is a marketable one, and they find reasons in the facts not to apply the principle. The only case which has come to attention concluding that a building restriction, because it paralleled public limitations, was not an encumbrance, is *Hall* v. *Risley*, 188 Or. 69 (1950). There, however, the restriction concerned had been placed on the record on the occasion of a wartime suspension of zoning regulations in Portland, Oregon. The restriction imposed at that time required conformity to the zoning law after the war emergency. Since the restriction did no more than incorporate the zoning law of Portland by reference, and would alter as the zoning law did, it was plausible to

---

[5]The court's crystal ball was clouded. It failed to anticipate the concrete, ceramic, glass, and metal exteriors which later came in vogue.

see the restriction as indistinguishable from public law and not an encumbrance.

Perhaps in like circumstances reference in a Massachusetts title to a specific public law, as it may from time to time be amended, to which the land is already subject, would not cloud a record title because the redundancy of the reference is apparent on the record, without reference to extrinsic materials.[6] On the facts of the case at bar, however, we have no doubt that the restrictive agreement acted as an encumbrance, and that, accordingly, the Carstensens could not deliver good and clear record title.

The Carstensens contend that there are two public laws which impose restrictions on their land so pervasive that they envelop and render meaningless the private restriction. The first is G. L. c. 131, § 40, as amended through St. 1978, c. 248, often known as the Wetlands Protection Act or the Hatch Act. That law, however, does not lay down absolute use prohibitions, as the private agreement does; rather it establishes a procedure and standards by which a local conservation commission or the State Department of Enviromental Quality Engineering may establish the conditions under which wetlands may be altered. Parallelism between the restrictive agreement and the Hatch Act is almost nonexistent.[7] Any congruence of the private restriction with the other public law to which the defendants advert is, if possible, even more elusive. What the defendants point to is St. 1961, c. 579, § 3, the very act which induced them to make the restrictive agreement they seek to characterize as something other than an encumbrance. The 1961 statute authorized the Commissioner of Natural Resources to acquire flood plain marsh and land; it did not require taking the defendants' land. That authority impos-

---

[6]Though redundant, such a reference might serve the purpose of alerting purchasers to the advisability of finding out just what limitations the referenced laws impose.

[7]Parenthetically, the Hatch Act has been amended twenty times since it was first enacted in 1967, a history which scarcely puts the possibility of future change beyond practical possibility.

Coons *v.* Carstensen.

ed no restriction on their property. The encumbrance to which the Carstensens subjected their land by agreement, so that the Commissioner would not exercise his authority, would not lose force if that authority were later revoked.

When parties use a phrase which has acquired as much decisional gloss as "good and clear record title," and undertake to deliver such a title, they assume an obligation to do just that. It does not lie in the mouth of the seller who has agreed to give clear record title to argue that the defect which clouds it is of little practical consequence.

*Judgment affirmed.*