JACOB FRIEDMAN, Doing Business under the Name of J. FRIEDMAN COMPANY, Appellant, v. AARON L. HANDELMAN et al., Respondents.

Argued December 1, 1949; decided December 29, 1949.

· *Leonard Weintraub* and *Howard Henig* for appellant. I. The covenant of record rendered title to the lots unmarketable. (*Isaacs* v. *Schmuck,* 245 N. Y. 77; *Bull* v. *Burton,* 227 N. Y. 101; *New York Investors* v. *Manhattan Beach Bathing Parks Corp.,* 256 N. Y. 162.) II. The Appellate Division erred in reversing the judgment for plaintiff entered at Trial Term; the contract was clear and unambiguous; it was prepared by the attorneys for the parties, as an executory agreement to assign on specific conditions, and should have been enforced according to its terms. (*Gearns* v. *Commercial Cable Co.,* 293 N. Y. 105; *Malbone Garage* v. *Minkin,* 272 App. Div. 109, 297 N. Y. 677; *Goldstein* v. *Frances Emblems,* 269 App. Div. 345; *Cream of Wheat Co.* v..*Crist Co.,* 222 N. Y. 487; *Matter of Loew's Buffalo Theatres* [*Golde Clothes Shop*], 233 N. Y. 495; *Schweinburg* v. *Altman,*

145 App. Div. 377, 207 N. Y. 681; *Schoonmaker* v. *Hoyt,* 148 N. Y. 425; *Jermyn* v. *Searing,* 225 N. Y. 525; *Stebbins* v. *Frisbie & Stansfield Knitting Co.,* 201 App. Div. 477; *Kent* v. *Universal Film Mfg. Co.,* 200 App. Div. 539; *Norcross* v. *Wills,* 198 N. Y. 336; *Moore* v. *Williams,* 115 N. Y. 586.)

*Jack L. Ratzkin* and *Milton Kunen* for respondents. I. Under the original contract of January 19, 1948, the purchaser could not reject title, on the basis of which plaintiff herein refused to go on with the deal, and plaintiff was similarly bound. (*Feist* v. *Block,* 115 App. Div. 211; *Baucher* v. *Stewart,* 136 App. Div. 844; *Stirn* v. *293 Avenue B Corp.,* 224 App. Div. 458; *McCarter* v. *Crawford,* 245 N. Y. 43; *Eastman* v. *Horne,* 205 N. Y. 486; *Haar* v. *Daly,* 232 App. Div. 423, 258 N. Y. 623.) II. The agreement between these parties consists of the contract of February 5, 1948, and the original contract of January 19, 1948. The two must be read together and, when so read, it is obvious that plaintiff was required to take title subject to the existing covenants and restrictions. (*Nau* v. *Vulcan Rail & Constr. Co.,* 286 N. Y. 188; *Schulman* v. *Cornman,* 221 App. Div. 170; *Empire Properties Corp.* v. *Manufacturers Trust Co.,* 288 N. Y. 242; *Atwater & Co.* v. *Panama R. R. Co.,* 246 N. Y. 519; *Wolkind* v. *Berman,* 232 App. Div. 47; *Matter of Eagar Constr. Corp.* [*Ward Foundation Corp.*], 255 App. Div. 291; *Fleischman* v. *Furgueson,* 223 N. Y. 235.)

LEWIS, J. On January 19, 1948, the defendant Handelman, acting for himself and the defendant Welsher, signed a contract — to which it will be convenient to refer as the January contract — by which he agreed to purchase from one Harry Lefrak a parcel of land, comprising ninety lots in the city of Long Beach, Nassau County. Under that contract the defendant, Handelman, was to take title " *Subject to covenants, restrictions and easements of record.*" (Emphasis supplied.)

Thereafter, on February 5, 1948, the defendant, Handelman, and the plaintiff, Friedman, entered into a written executory contract — hereinafter referred to as the February contract — by which the defendant agreed to assign to plaintiff the January contract for the sum of $7,000, of which $2,500 was deposited as a down payment.

Upon this appeal we are concerned with the following provisions of the February contract:

"WHEREAS, the Assignor [the defendant herein] is the 'purchaser' under an agreement and contract of sale dated January 19, 1948 between Harry Lefrak and Aaron L. Handelman, which provides for the purchase of 90 lots, pieces or parcels of land in the City of Long Beach, County of Nassau, which contract has been initialed by the parties hereto and made part hereof; and

"WHEREAS, the Assignee [the plaintiff herein] desires to purchase the right, title and interest of the Assignor in said contract, including the right to the deposit of $2,500. made upon execution of contract

"Now, THEREFORE, for and in consideration of the premises and the mutual covenants and conditions herein contained, it is agreed, as follows:

"1. The Assignor agrees to assign and the Assignee agrees to accept the assignment of the aforesaid contract of sale between Harry Lefrak and Aaron L. Handelman, and the Assignee has upon the execution of this agreement paid to the Assignor the sum of $2,500 by check subject to collection."

There is also a provision requiring the defendant Handelman, as assignor, to deliver to his attorney, as escrow agent, the January contract and an assignment thereof to the plaintiff, to be held by such agent in escrow under stated conditions of which our chief concern is with paragraph 2c: "c. In the event the Home Title Insurance Company shall refuse to insure good and marketable title to at least 80 of the 90 lots described in the contract of sale hereinabove referred to, then this agreement, at the option of the Assignee, may be declared null and void and the Assignor shall thereupon return to the Assignee the sum of $2,500. this day deposited, and upon the return of said sum the escrow holder may thereupon return to the Assignor the contract of sale and assignment thereof held by him in escrow. In the event the Assignor fails to return the said sum of $2,500. to the Assignee on or before February 28, 1948 in accordance with the provisions of this paragraph, the escrow holder shall deliver to the Assignee the contract of sale and assignment held by him in escrow without any further payment therefor by the Assignee."

In accord with procedure specified in the February contract the Home Title Insurance Company was commissioned to make a title search of the subject property and was requested to insure the title thereof. When that company delivered the title search it appeared therefrom that of the ninety lots for the conveyance of which the January contract made provision, at least eighty lots were subject to the following restrictions and covenants of record in the office of the Register of the County of Nassau:

" And the party of the second part hereby covenants and agrees for itself, its successors and assigns forever that neither the party of the second part nor its successors and assigns will erect nor permit the erection on the aforesaid property of any structure except a dwelling on not less than 2 plots.

" It is understood and agreed however, that this covenant may be changed, modified or annulled by the City of Long Beach with the consent of the owners of adjacent property, but without the knowledge or consent of the surrounding property owners or the grantees of the party of the second part."

The report of the title company showed the restrictions mentioned above, and stated its refusal to issue its policy insuring good and marketable title to at least eighty of the ninety lots described in the January contract, without excepting those restrictions from the coverage of its policy. Thereupon the plaintiff, as assignee under the February contract — asserting the right claimed by him to be reserved under paragraph 2c thereof (quoted *supra*) — declared the February contract null and void and demanded the return of his deposit of $2,500. The subsequent refusal by the defendant to comply with plaintiff's demand gave rise to this action.

At Trial Term — where the right to a jury trial was waived and it was stipulated that no formal findings of fact and conclusions of law be made — the Trial Justice, after a trial of the issues tendered, directed judgment in favor of the plaintiff in the sum of $2,500 and interest.

The Justice at Trial Term held that, whatever the rights and liabilities of the defendant Handelman and the landowner Lefrak may have been under the January contract, the plaintiff Friedman, when he entered into the February contract with Handelman, caused to be inserted in unequivocal terms the

conditions under which he would take over the January contract; that the February contract — not being a mere assignment of the January contract — contained new conditions which modified the terms of the January agreement; that plaintiff was not required to take an assignment of the January contract " as is ", but exercised his right to attach new conditions by reserving the right to cancel the contract in the event Home Title Insurance Company would not insure good and marketable title to at least eighty lots; that in the circumstances disclosed by this record, the refusal by Home Title Insurance Company to insure the title without exception afforded the plaintiff — under paragraph 2c of the February agreement — a legal basis for demanding the return of the down payment he had made.

At the Appellate Division the judgment entered at Trial Term was reversed and the complaint dismissed on the law and the facts (two Justices dissenting); certain findings of fact and a single conclusion of law contained in the opinion rendered by the Trial Justice were disapproved and disallowed and in lieu thereof the court, in an opinion *Per Curiam,* made new findings of fact and conclusions of law. As already indicated, the January contract — which was initialed by the parties and made a part of the February agreement — contained the clause " SUBJECT to covenants, restrictions and easements of record." The Appellate Division found, in effect, that this clause constituted notice to plaintiff of covenants affecting the lots in question. Accordingly, it was held, the plaintiff could not have expected that title insurance could be procured which in scope was broader than was justified by the condition of the property as described in the January contract.

Clearly the recorded restriction reported by the Home Title Insurance Company, which restriction forbade " * * * the erection on the aforesaid property of any structure except a dwelling on not less than 2 plots ", is an incumbrance so substantial as to make unmarketable the title to at least eighty of the ninety lots to which the January contract referred. (*Bull* v. *Burton,* 227 N. Y. 101, 111.) When unqualified title insurance was refused on those eighty lots that circumstance, in our view, was enough, within the unequivocal language of paragraph 2c of the February contract, to entitle the plaintiff to the return of his down payment.

True it is there is evidence that the plaintiff and the defendant Handelman, as parties to the February agreement, initialed the January contract which, as we have seen, contained the general recital "SUBJECT to covenants, restrictions and easements of record." It is also true that, by reference, the January contract was "made a part of the February agreement". There is no evidence, however, that, when the plaintiff and the defendant Handelman agreed upon paragraph 2c of the February contract, there was either qualification or limitation of the plaintiff's right — there clearly stated — to declare the agreement null and void "In the event the Home Title Insurance Company shall refuse to insure good and marketable title to at least 80 of the 90 lots described in the contract of sale hereinabove referred to * * *." We may not by construction excise from the February agreement paragraph 2c, which the parties intended should define their rights and obligations; nor may we insert in that paragraph following the phrase "good and marketable title" the words "SUBJECT to the covenants, easements and restrictions of record." In other words we may not "* * * make a new contract for the parties under the guise of interpreting the writing." (*Heller* v. *Pope,* 250 N. Y. 132, 135; *Cream of Wheat Co.* v. *Crist Co.,* 222 N. Y. 487, 493–494; *Brown* v. *Manufacturers Trust Co.,* 278 N. Y. 317, 324; *Brainard* v. *New York Central R. R. Co.,* 242 N. Y. 125, 133; *Norcross* v. *Wills,* 198 N. Y. 336, 341.)

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

DYE, J. (dissenting). I dissent and vote for affirmance. The February contract, as written, constitutes an assignment of the January contract and makes no exception to its provision that title was to be "SUBJECT to covenants, restrictions and easements of record." If more were needed to show the intent of the parties another clause specifically recites that the January contract "has been initialed by the parties hereto and made part hereof". When such plain words are given their usual and ordinary meaning, it is quite apparent that the parties intended to incorporate the provisions of the January contract into the February contract. Surely had the intent been

otherwise, specific language to the contrary could very well have been used. Experienced real estate operators, as these parties undoubtedly are, take into consideration that subdivision developments will have, almost without exception, certain restrictive covenants as to use, common to the tract. To now say that an agreement fails because a title insurance company merely lists as an exception these common restrictive covenants which are a matter of public record, is to provide an unwarranted escape mechanism which is in complete derogation of the operative provisions of this writing that title was to be subject to covenants and restrictions of record.

Admittedly, the presence of a restrictive covenant running with the land is sufficient ground for the rejection of title by a vendee *if* the contract is to sell *free from all incumbrances*. In this event only may a covenant be regarded as such an incumbrance as to render a title unmarketable. (See *Kimball Co.* v. *Fox,* 239 N. Y. 554.) Nor is *Bull* v. *Burton* (227 N. Y. 101) to the contrary. The dissenting opinion therein (p. 114) clearly shows that no mention of the covenants there at issue — which were, indeed, much more restrictive than that here — was included in the contract. In addition we place considerable reliance upon the second sentence of the covenant before us which ties it affirmatively to the local municipal zoning regulations. The restrictions therefore amount to no more than those which *by law* an owner would be compelled to observe in any case.

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., CONWAY and BROMLEY, JJ., concur with LEWIS, J.; DYE, J., dissents in opinion in which DESMOND and FULD, JJ., concur.

Judgment accordingly.