Froessel, J. (dissenting).
We dissent and vote to reverse. In our opinion, the agreement before us is tantamount to a lease of the juke box and comes within the scope of section 399 of the General Business Law. In the first place, the parties themselves unquestionably considered their relationship as one of lessor-lessee, since the agreement twice refers to defendant as the “ lessee ”. Although we recognize that this fact does not automatically make the agreement a lease (Matter of New York World-Tel. Corp. v. McGoldrick, 298 N. Y. 11, 18), the construction placed upon the language by the parties themselves is a consideration of great importance (Insurance Co. v. Dutcher, 95 U. S. 269, 273; Woolsey v. Funke, 121 N. Y. 87, 92; 2 New York Law of Contracts, § 804). We “ have no right, under the guise of construction, to excise from the * * * agreement the rights and obligations of the parties as defined by them, nor may we add thereto (Friedman v. Handelman, 300 N. Y. 188,-194).” (Delancey Kosher Restaurant & Caterers Corp. v. Gluckstern, 305 N. Y. 250, 257.)
Here, the parties interpreted their own relationship, thus evidencing to us their intention and expressing their intention by what they wrote (Raleigh Associates v. Henry, 302 N. Y. *407 467, 473). Moreover, the word “lessee”, as expressly used in the contract when referring to defendant, was twice inserted in handwriting in the original agreement. Even though it were assumed that there is some doubt or uncertainty as to the printed portion, it is well settled that that which is written should control the interpretation of the instrument (Heyn v. New York Life Ins. Co., 192 N. Y. 1, 6).
Secondly, an essential element of a lease is the transfer of control and possession of property real or personal at an agreed rental. Percentage rentals are extremely common today and are used for a variety of purposes (see Tuttle v. W. T. Grant Co., 6 N Y 2d 754; Mutual Life Ins. Co. of N. Y. v. Tailored Woman, 309 N. Y. 248; McMichael & O’Keefe, Leases, Percentage, Short and Long Term). Whether the percentage rental is based on the income from the use of real estate or personal property, it is nevertheless deemed rental. Here, defendant was required to pay the first $20 income from the juke box weekly plus a percentage of the .remainder; but that was not all. Just as the lessee of real estate may be required to pay, in addition to a percentage rental, interest on mortgages, taxes and assessments and other charges as part of the total rental, so here defendant was required under the agreement to assume many other obligations.
These obligations, by no means inconsiderable, translated in value to the plaintiff, and equivalent to additional rental, at the tenant’s direct cost, are as follows:
(1) to provide space for the juke box, a sizable instrument, for which space defendant had to pay rent;
(2) to pay for the electric current;
(3) to maintain the juke box in readiness for operation during all business hours;
(4) defendant was not permitted to install any other phonograph or device for the transmission of music in any part of the premises during the term of the agreement;
(5) he was also bound to arrange for assumption of the agreement by any purchaser of the business, which might well affect the selling price and, should he fail to procure such assumption, he would be in breach and liable for damages.
In Melodies, Inc., v. Mirabile (4 Misc 2d 1062, mod. 7 A D 2d 783) defendant was held liable for substantial damages as a result of a breach of a four-year contract, said breach consisting *408 of his sale of the business without securing the assumption of a similar agreement by the vendee.
These obligations are substantial considerations furnished by the defendant for the benefit of the plaintiff, so that the latter may receive his share in the nature of a percentage rental, and all taken together constitute the aggregate rental. The purpose of the statute is to protect a person such as defendant here from continuing responsible under these obligations involving payments of money and otherwise as hereinbefore mentioned.
Moreover, the nature of the arrangement entered into by the parties in the instant case, together with the language employed by them in describing their relationship, leaves no room for doubt that it is the type of “ business contract ” at which section 399 of the General Business Law was aimed. So Assemblyman Savarese, the sponsor of the statute in effect stated: ‘ ‘ This bill seeks to protect all businessmen from fast talking sales organizations armed with booby traps which they plant in business contracts involving equipment rentals * * *. Undoubtedly,'many unsuspecting small businessmen are taken in by. such evil practices which—taken collectively—are costing those who cannot afford it many thousands of dollars yearly. The automatic renewal clause was eliminated from landlord leases (see Real Property Law, § 230). It should be outlawed in business contracts, too. ” (N. Y. Legis. Annual, 1953, pp. 61-62; emphasis supplied.) Since the section is remedial in nature, designed to protect the unwary, its construction should be liberal and ‘ ‘ nice distinctions as to whether this is a ‘ service ’ should not derogate from the fact that there was sufficient in the nature of the arrangement and the words of the agreement to bring these cases within the scope of section 399.” (Peerless Towel Supply Co. v. Triton Press, 3 A D 2d 249, 251.)
In Melodies, Inc., v. La Pierre (4 A D 2d 982), a case also involving an automatic music service contract, the court stated that section 399 ‘ ‘ may properly be held applicable to a service contract of [this] type ”. However, since the automatic renewal clause became operative prior to the effective date of the statute, it could not there be given effect.
It is not correct to say that defendant has neither the use nor the right to control the use of the juke box nor any other form of dominion over it. Who else would use the juke box but he and *409 Ms customers, and their use is Ms use. Moreover, by the express terms of the contract, he is required to maintain the juke box in readiness for operation during all business hours and to furnish it with electric current. Furthermore, plaintiff agreed ‘ ‘ to supply records and replace parts that have been damaged as a result of ordinary wear and tear without any cost to the ” defendant, thus clearly implying that defendant would be responsible for any other damage, since the machine was in his custody and control.
Finally, the cases cited in the forepart of the prevailing opinion are in nowise apt. They deal with entirely different issues, as that opinion concedes. The question involved in those cases was whether a lease of real property was created, and has no reference to situations embraced within what is now section 399 of the General Business Law. The issue of automatic renewal was in nowise involved. In the recommendation made by the sponsor of section 399, there was not the slightest reference to these cases. As already noted, the statute was aimed at “ business contracts ” costing those who cannot afford it — ‘ ‘ taken collectively ’ ’ — many thousands of dollars yearly. There is no suggestion that a particular individual must suffer a heavy financial burden.
Accordingly, the order of the Appellate Division denying defendant’s motion for summary judgment should be reversed, the motion should be granted, and the certified question answered in the affirmative, with costs.
Chief Judge Desmond and Judges Dye, Burke and Foster concur with Judge Fuld ; Judge Froessel dissents in an opinion in which Judge Van Voorhis concurs.
Order affirmed, etc.