William B. Brennan, Jr., J.
This is a motion by the plaintiff for summary judgment under rule 113 of the Buies of Civil Practice in an action to impress a vendee’s lien upon real property.
On September 2, 1959 the plaintiff’s assignor, now president of the plaintiff corporation, entered into a contract for the purchase and sale of certain real property in the Village of Great Neck Plaza. The contract was prepared by the plaintiff’s attorneys from information supplied by the defendant who is herself an attorney. Part of the information was a title report which included the text of covenants and restrictions contained in deeds recorded in 1912 and 1918. Part of such covenants and restrictions reads: ‘ ‘ That neither the said party of the second part, nor his heirs or assigns will or shall at any time hereafter erect or permit to be erected upon any part of land conveyed by present indenture any * * * building of the character or description known as a tenement house ”.
The contract, alleged by defendant to have been prepared on the basis of the foregoing report, among other documents, recites that the seller agrees to sell and convey and the purchaser agrees to purchase the described premises: ‘ ‘ subject to covenants and restrictions of record, if still in effect, provided that the same do not render title unmarketable and are not now violated by the present use of the premises and provided that the same do not prohibit a three story multi-family apartment house.”
The contract contained the further proviso: “ The seller shall give and the purchaser shall accept a title such as any title company which is a member of the New York Board of Title Underwriters will approve and insure. ’ ’
Liability of the seller in the event of inability to convey title in accordance with the terms of the contract was limited to a refund of the deposit and the net costs of title examination and survey. The seller was to give a bargain and sale deed with covenant sufficient ‘ ‘ to convey to the purchaser the fee simple of the said premises, free of all encumbrances, except as herein stated. ’ ’
Title was to close on May 1, 1960. On April 29, 1960, by a written agreement acknowledged by all affected parties, the closing was adjourned to September 1, 1960, at the request of the plaintiff herein and its assignor, and time was made of the essence. It was further provided: “ and if the purchaser or assigns shall default and wrongfully fail to take title on the *1080 closing date hereinabove provided, namely, September 1, 1960, the Contract of Sale shall be considered cancelled and the deposit shall be retained by the seller as liquidated damages, and neither party shall have any rights under said Contract of Sale, as amended, against the other.”
On August 26 the plaintiff’s attorneys sent defendant’s attorneys a certified description and exception sheet furnished by the title company selected by the attorneys for the plaintiff and its assignor. There was an exception for restrictive covenants prohibiting the construction of ‘ ‘ any building of the character or description known as a tenement house ’ ’, but the letter of transmittal does not expressly refer to it.
At the closing a tender of a deed was refused because the title company would not omit the exception; a tender of the balance due for ‘ ‘ a deed in accordance with the Contract of Sale ’ ’ was met with an offer of the same deed as had already been rejected. Demand was made for return of the down payment.
On September 16,1960, after the operative facts fixing liability of the parties had occurred, the title company offered to insure that “ construction of a modern apartment house will not be permanently enjoined” provided that the company would not be liable for the cost of litigation or for violations of setback restrictions and that an additional premium were paid.
Plaintiff commenced this action seeking recovery of its deposit, asking that it be granted a lien therefor, and requesting counsel fees and other relief. The answer consists of a general denial plus specific denials of plaintiff’s alleged performance.
The plaintiff now moves for summary judgment including assessment of counsel fees and the reasonable cost of title examination. The defendant resists the motion and asks for summary judgment for the amount of the deposit if it be determined that there is no issue of fact to be tried.
In the absence of "the title company insurance clause, the seller would have been obligated to deliver a marketable title. With it, “ The seller was obligated to convey the absolute fee of the premises, free from all encumbrances except such as are stated and provided for in the contract, and, in addition, the purchaser was only obligated to accept the title if it was one that [a title company of the designated group] would approve and insure, subject to the exceptions set forth in the said agreement. The provision in a contract for a title company policy is merely an added safeguard, for the benefit solely of the purchaser * * *„ The contract must be read as a whole, and the clause with refer *1081 ence to the title policy and the clause agreeing to convey the absolute fee of the premises free from all incumbrances except those mentioned in the contract require that two standards must be met.” (New York Investors v. Manhattan Beach Bathing Parks Corp., 229 App. Div. 593, 597, 598, affd. 256 N. Y. 162; see, also, Kopp v. Barnes, 10 A D 2d 532, 534, 535; Tenner v. Retlaw Development Corp., 163 Misc. 248.) This is so, because to hold that the title insurance clause meant no more than that the seller should tender a good title, one free from legal objection, would in effect condemn the title insurance clause as meaningless or redundant. (Flanagan v. Fox, 6 Misc. 132, 134, 135, affd. on opinion below 144 N. Y. 706.)
That the title company offered qualified insurance against - enforcement of the restrictive covenant, which would still burden the plaintiff with litigation costs and the impairment of marketable title that potential litigation creates, is not sufficient. Even if the title company were arbitrary, it would not change the legal consequences for the seller, because it is the seller’s burden to secure the performance of the title company under the clause in question. “The parties have expressly agreed that [its] act shall be material. Whether it is so in fact or not is beyond the province of the courts to decide. The courts cannot make an agreement for the parties and cannot, therefore, dispense with a condition which they have imposed. ” (Flanagan v. Fox, supra, pp. 135-136.)
A cogent summary of the applicable rule is to be found in the recent Second Department case of Kopp v. Barnes (10 A D 2d 532, supra) decided in May, 1960 where the court, referring to a title insurance clause' such as the one here involved, said: “Respondent’s [seller’s] arguments are based on a misconception of the legal effect of his agreement to furnish a title which a title company would approve and insure. Having agreed to furnish such a title, he was required at the closing to tender a title to the property described actually approved by a qualified company without exceptions other than those contemplated by the contract. The procurement of such approval was a condition precedent to the right to require performance by appellant [purchaser]. Having presented proof that the title company, to which she made application for insurance, had refused to insure title unless subject to the exceptions noted, appellant was not required to prove that no title company associated with the New York Board of Title Underwriters would insure the title without such exceptions. It was incumbent on respondent, who had assumed that burden, to establish that he *1082 had met the condition imposed by his contract, and, having defaulted in such proof, he had no defense to the motion for summary judgment ’ ’ (pp. 534—535).
The defendant argues that the covenants and restriction clause is superior to the title insurance clause and constitutes an exception to the latter clause. However, the covenants and restriction clause itself is stated to be inoperative if the covenants and restrictions rendered title unmarketable or prohibited a three-story multi-family apartment house. It is unnecessary to consider defendant’s contention at length. In Kopp v. Barnes (supra) the contract contained not only the title insurance clause but also a clause that the property should be conveyed “ subject to restrictive covenants, conditions, agreements and easements of record, if the same did not render the title unmarketable.” The court ruled (10 A D 2d 532, 535-536): “ Neither is a trial required to determine whether the restrictive covenants and reservations excepted by the title company rendered respondent’s title unmarketable. Of course, appellant would have been entitled to prevail at the Special Term if she had established beyond question that title to the property to be conveyed was unmarketable by reason of the defects in title noted in the title report. She was not required, however, to go that far. She established beyond question that the title company, to which she had applied for insurance and which concededly met the contract requirements as to qualifications, had declined to insure title, free and clear of the incumbrances and defects which it had reported. If in fact the property was subject to the incumbrances noted, there could be no doubt that respondent’s title was unmarketable (cf. Bull v. Burton, 227 N. Y. 101, and cases cited p. 111; Friedman v. Handelman, 300 N. Y. 188, 193, supra). Respondent, however, could not avoid liability by proof that the property was not subject to the incumbrances. What he was required to prove was that a qualified title company would insure title free and clear of them, and the record is devoid of such proof.” (See, also, Antin v. O’Shea, 270 App. Div. 1046.)
In Beinhauer v. Morris (142 App. Div. 398, 400) the court said: “ While it may be true that the encroachments shown upon the Lovell survey, which constituted the extreme claim made, are not of sufficient importance to warrant a finding by the court that the title was not marketable, that is not the question presented upon this appeal; for by the agreement of the parties the title which was to be tendered by the vendor was not merely such title as the law would hold marketable, but, in addition *1083 thereto, such title as one of - the three specified title insurance companies would insure.”
The record does not disclose an unequivocal approval of the title by the title company. The plaintiff was not, therefore, bound to accept the title tendered (New York Investors v. Manhattan Beach Bathing Parks Corp., 256 N. Y. 162, 164, supra).
Accordingly, the motion for summary judgment is granted. The answer is stricken and the plaintiff is found to be entitled to the sum of $5,414, being the $5,250 deposit plus $164 which is the uncontroverted amount of the net cost of examining title. The plaintiff is adjudged to have a lien on the premises to that extent. That branch of the motion which seeks the award of a counsel fee is denied. The contract itself fixes the measure of liability of the seller in the event of her inability to convey title in accordance with the contract.
(Reargument)
Defendant’s application for reargument is granted.
The court is not unaware of the burdens imposed upon the defendant and that plaintiff may have been prompted to reject title by other than title considerations. But it is the court’s sole function to interpret the contract as the parties drew it and it lacks power to rewrite or reform it in this action. The original decision herein states the facts. Even if it were assumed that the title company’s original exception sheet certified only exceptions provided for by the contract (an assumption that is unfounded since exception A of the certification sheet on title number 2628113 recited covenants and restrictions without limiting their scope as the contract itself did), there is a sufficient question of right to erect an apartment house to make title unmarketable. The tenement house restriction was first stated in 1912 and fully restated in a deed made March 7, 1918, recorded March 15, 1918. It appears from Schrage v. Doran Bldg. Corp. (257 App. Div. 1012, affd. 281 N. Y. 864) that where a restriction against a tenement house is imposed after 1912, it bans an apartment house. This appears to be the first Court of Appeals review of a restriction referring to tenement houses following amendment of the Tenement House Law in 1912 after a decision of the Court of Appeals which made a distinction between a tenement house and an apartment house in a different context (Grimmer v. Tenement House Dept., 204 N. Y. 370).
The title company’s later and qualified offer to insure that an apartment house would not be permanently enjoined, rather than insuring that the restrictions do not prohibit a three-story *1084 multi-family apartment house, is some evidence that its title-wise legal staff was not as persuaded of the potential purchaser’s rights in this respect as is the seller. To say that the restriction is litigable is to say that the title is unmarketable.
Since the record is clear and the facts are documentary, this court has no alternative but to adhere to its original decision granting summary judgment.