Thomas P. Farley, J.
Motion by plaintiffs for summary judgment.
This action is brought to recover the downpayment made on a contract, dated June 10, 1960, for the purchase and sale of a two-family dwelling which was to be erected by the defendant. The pertinent provisions are contained in paragraphs (7), (8A) and (9) of the contract proper and paragraphs 3 and 8 of a rider thereto, all of which read as follows:
“ (7) The Purchasers do hereby agree to make diligent, truthful and proper applications to a lending institution designated by the Seller and without delay to furnish such verifications of bank accounts and employment or any other instruments or information as may be required by said lending institution in the processing of the Purchasers’ application, for the mortgage loan described below. The said loan is to be secured by a first mortgage against the premises herein described:—
“ (8A) conventional mortgage:— A first mortgage in the amount of $25,000.00, to run for a period of 30 years, to bear interest at the rate of 6% per annum and to be payable in monthly installments which may include amortization of principal, interest, taxes, water rates if not a private company, fire and other hazard insurance premiums, and such other provisions *1028 as may be required by the lending institution.
( ( * # *
“ (9) In the event the lending institution and/or V. A. and/or F. H. A. shall refuse to approve the application aforesaid for the amount set forth and upon the terms and conditions above described, then this contract shall become null and void and upon refunding the money deposited hereunder, both parties hereto shall be released from any liability hereunder.”
“3. In the event that said mortgage shall be granted in a reduced amount, and provided said reduced amount shall be not more than $200.00 less than the amount specified for said mortgage in foregoing paragraphs, then and in event, the purchaser agrees nevertheless, to accept such mortgage in said reduced amount and the amount of cash to be paid on closing shall be increased by the amount of such reduction so as not to vary the total purchase price contracted for herein. The purchaser knows that the sale of the premises described herein depends upon the bank making said loans. If, after diligent application is made by the purchaser, they are not approved by the lending institution, then this contract shall be deemed can-celled and the monies paid hereunder by the purchaser to the seller shall be refunded to the purchaser and the parties hereto shall be released from any liability hereunder.”
‘ ‘ 8. Anything to the contrary hereinbefore contained notwithstanding, should seller be unable to deliver the premises herein in accordance with the terms of the within contract on or before March 1, 1961 Purchasers shall have the option to cancel this contract, provided written notice of the exercise of the within option is made to the seller on or before March 5, 1961. Upon the exercise of the within option as herein provided, this contract shall be cancelled and null and void and the seller shall refund the monies received herein. ’ ’
At the same time as plaintiffs Cohen and Arnold Kornblatt signed the contract of sale and made the downpayment, they also completed, signed and left for processing, with a representative of the defendant, applications for a mortgage loan which had been suppliéd by him. Employer and bank verifications were also received, completed and returned to the defendant. Nothing further was heard by plaintiffs until plaintiff Robert D. Cohen received a letter, dated October 21, 1960, from Spinetta & Barr of New York, Inc., mortgage brokers, which stated that the lending institution had approved their application for a mortgage loan “ in the amount of $23,000.00 for a period of 30 years with interest at 6% per annum ” and which advised said plaintiff to show his acceptance of those terms by *1029 signing and returning a copy of that letter and by having plaintiff Arnold Kornblatt sign it too. No mention was made of the fact that the minimum mortgage amount plaintiffs were obligated to accept under the contract was $24,800.
Upon receipt of the letter of October 21,1960, plaintiff Arnold Kornblatt questioned the seller’s agent as to the amount of the commitment and the name of the lending institution and was given the name of the bank. Thereafter, receiving no further word from defendant, said plaintiff telephoned the bank directly and learned that the maximum commitment being given by it for the house in question was $24,000. Demand for return of the downpayment was thereafter made and refused. This action was commenced on January 5, 1961. The substance of the telephone call referred to above was confirmed by the bank in a letter dated January 30, 1961.
In its answer, defendant denies that plaintiffs received a notice from the seller that the lending institution had approved a mortgage loan for the sum of $23,000, which was $1,800 less than the minimum set forth in said contract,, and that plaintiffs have duly performed all conditions on their part to be performed. Defendant then sets forth three affirmative defenses: first, that plaintiffs have failed and refused to co-operate with defendant in making proper application to lending institutions designated by it; second, that plaintiffs have failed and refused to co-operate in the designation of colors, and third, that this action was prematurely brought.
In its opposing affidavit on this motion, defendant argues, in substance, that under paragraph (7) of the contract, plaintiffs were required to make application to more than one lending institution, if such became necessary, and that under paragraph 8 of the rider to the contract, defendant had until March 1, 1961 to obtain the mortgage required. One Frank Spinetta, president of the mortgage brokers referred to, states, in his opposing affidavit, that he obtained a mortgage loan for $23,000 in October of 1960, but this was unsatisfactory to plaintiffs and that he thereafter submitted to them applications to other institutions and “ had obtained an oral approval and commitment for this loan of $25,000.00 approximately a month ago ”, which would be some time in February of 1961.
The crucial question presented is whether the contract of June 10,1960 obligated plaintiffs to apply to a second lending institution after the first lending institution designated by the seller had refused to issue a mortgage in the minimum amount required under the contract.
*1030 In determining that question, the intention of the parties controls ‘ ‘ but only to the extent that they evidenced what they intended by what they wrote ” (Raleigh Associates v. Henry, 302, N. Y. 467, 473). What did they write here? In paragraph (7) plaintiffs agreed “ to make diligent, truthful and proper applications to a lending institution designated by the Seller ’ ’. In paragraph (8A) reference was to “ the lending institution In paragraph (9) cancellation was to follow in the event “ the lending institution ” refused to approve “ the application aforesaid ”. In paragraph 3 of the rider, it was expressly provided that the purchaser knew that the sale depended upon “ the bank making said loans ” and cancellation of the contract was again provided for if, “after diligent application is made by the purchaser, they are not approved by the lending institution ’ ’.
No express provision was made for application to a second lending institution if the first lending institution rejected the application to it (cf. Weinberg v, Hutchinson Estates No. 8, N. Y. L. J., July 6, 1959, p. 7, col. 6). None in the opinion of the court can be read into the language used without making a new contract for the parties under the guise of interpretation, which is, of course, proscribed (Friedman v. Handelman, 300 N. Y. 188, 194). True, in paragraph (7) plaintiffs agreed to make “applications”, but to whom? To “a lending institution ” designated by the defendant.
Glassman v. Gerstein (10 A D 2d 875), while not precisely in point, is worthy of note for the interpretation Mr. Justice Shapiro placed upon the words “ a lending institution ”. There the contractual provision in question, as disclosed in the record on appeal, read in pertinent part as follows: “ It is agreed that the purchaser shall expeditiously apply to a lending institution for a mortgage ”. It appeared that the purchaser unsuccessfully applied to more than one lending institution although the seller vigorously urged that there was insufficient proof that the purchaser had applied to any more than one lending institution. The seller then offered to give a mortgage of her own upon even more favorable terms than required under the contract, but the purchaser refused to accept such a mortgage and sued for and succeeded in recovering his downpayment. In his oral decision, Mr. Justice Shapiro stated as follows concerning the contractual provision before him: “ It reads specifically that the application shall be made to ‘ a lending institution ’. It doesn’t say institutions. There was therefore no requirement upon the part of the plaintiff purchaser to go to more than one lending institution”.
*1031 A reading of the pertinent provisions of the entire contract and giving effect to each, as the court must where there is no irreconcilable conflict (Poel v. Brunswick-Balke-Gollender Co., 216 N. Y. 310, 322), and there is none here, leads the court to the conclusion that under the contract of June 10, 1960, and the rider thereto, plaintiffs were obligated to apply to one lending institution designated by defendant and to one alone. This they did and their application for a mortgage in the amount specified in the contract was rejected. Such being the case, the specific cancellation provision of paragraph (9) came into play and not the general provision contained in paragraph 8 of the rider (Brown v. Shorewood Homes, 27 Misc 2d 954).
Accordingly, the motion is granted.