Emilio Nunez, J.
Plaintiffs seek to enjoin defendants from using the name “Findlay Galleries”, “Wally Findlay Galleries ’ ’ or any other designation incorporating the name ‘ ‘ Find-lay ” in connection with the operation of an art gallery at premises 17 East 57th Street, New York City.
Plaintiff David B. Findlay and defendant Walstein G. Findlay are brothers. I will refer to them as “ David ” and “ Wally ”. David, operating either individually or through various corporate names has conducted a fine arts business on East 57th Street or its vicinity continuously for more than 25 years. He has used the names “ Findlay Galleries ”, “ David B. Findlay Inc.”, “David B. Findlay” and “David B. Findlay Galleries ”. In most instances, as appears from the defendants ’ exhibits, whenever “David B. Findlay Inc.” was used, it has been accompanied by the legend “ Findlay Galleries Established 1870”.
Wally Findlay, who has for many years operated an art gallery in Chicago, Illinois, and more recently in Palm Beach, Florida, under the name ‘ ‘ Findlay Galleries, Inc., ’ ’ opened, in November last, a gallery at premises 17 East 57th Street right next door to David’s place of business, under the name “ Wally Findlay Galleries ”. For many years David conducted his business on the second floor of 11-13 East 57th Street but during 1964, upon learning that his brother was about to move into the street floor at No. 17 East 57th Street, in self-defense and in an effort to survive, rented additional street level space at No. 15 East 57th Street.
The Findlay art business was founded by David’s and Wally’s grandfather in Kansas City in or about 1870; their father continued the business under the name ‘ ‘ Findlay Galleries, Inc.” which operated art galleries in Kansas City, Chicago and New York City. The principal office of the corporation was in Kansas City, Missouri; the Chicago branch was managed by Wally and the New York branch was managed by David. About 1936 the Kansas City gallery was closed and the business was continued through the Chicago and New York galleries, David remaining in New York and Wally in Chicago. “Findlay Galleries, Inc.”, the Missouri corporation, continued to operate the New York and Chicago galleries until 1938 when a dispute arose between David and Wally; they decided to go their separate ways. By agreement dated July 18, 1938, “ Findlay Galleries, Inc.” sold to Wally, individually, the lease, furniture and fixtures of the Chicago gallery for $3,500. The agreement, signed by David as president, contemplated that “-Findlay Galleries, Inc.” *651 would remain in business and actually did, except in Chicago, where it agreed it would not engage in business for 10 years. The same agreement provides that Wally “ shall have the right to use the name of the ‘ Findlay Galleries, Inc.’ in the conduct of his business.” Wally caused to be organized an Illinois corporation under the name ‘ ‘ Findlay Galleries, Inc. ’ ’ in August of 1938. Wally has continued in the art business under that name in Chicago and Palm Beach, Florida.
Following the 1938 agreement David continued to operate his art gallery on or near East 57th Street under the name “Findlay Galleries, Inc.” until about 1942. Thereafter, the “ Inc.” was dropped from the name and the business continued under the name “Findlay Galleries”. He has also used the name “David B. Findlay Galleries” and “David Findlay”. During the past 15 years both brothers have engaged in national advertising and in order to avoid confusion with his brother’s business, David has used his full name or one of the variations above mentioned.
Both brothers enjoy an excellent reputation in the fine arts business. David has confined his activities to 57th Street. While it appears that both brothers have prospered, the evidence justifies the finding which I make, that Wally is by far the more aggressive, affluent and stronger-willed of the two brothers. While Wally has expanded many times and proclaims to have “America’s largest contemporary art galleries” and now owns his own buildings in Chicago, Palm Beach and New York, each acquired at a cost in excess of $1,000,-000, David has limited the operation of his business to rented space on 57th Street in a limited operation with his sons and a relatively small number of employees.
In October, 1963 Wally acquired premises 17 East 57th Street. He visited David and informed him of his plans to open an art gallery next door to David’s place of business. Wally testified that David was very upset and disconcerted at learning this news. David objected to Wally’s use of the name “Findlay” on 57th Street and told his brother so in no uncertain terms. By letter dated October 11, 1963, David warned Wally that he would “ resist any appropriation by you in New York of the name Findlay in connection with a gallery”. The letter further warned Wally that “ any funds spent by you to establish a gallery at 17 East 57th Street under the name Findlay Galleries, Inc. (or any variation thereof using the name Findlay) are spent at your peril.”
David’s objections and pleas seemed to have had some effect upon Wally for as renovation work on his building *652 proceeded during the period of approximately one year (from October, 1963 to September, 1964) a sign in large letters proclaimed the opening of the <£ W. C. F. Galleries, Inc.” (those being his initials). The proof shows and I find that Wally listed his business under that name in the New York telephone directory and that he advertised his gallery in a display advertisement in the same directory and in several other publications under ££ W.C.F. Galleries”. However, some time in September, 1964, Wally seems to have had a change of heart; the sign on his building was repainted to announce the imminent opening of the “ Wally Findlay Galleries ” affiliated with 11 Findlay Galleries, Inc.” On November 5, 1964 the gallery was opened as lastly announced and this action followed.
I find that David has established a valuable goodwill and business reputation as an art dealer on East 57th Street during his many years in business there. This has been accomplished by hard work, business ability and an expenditure of large sums of money. I do not believe that Wally set out to deliberately exploit this good will and business reputation of the plaintiffs, but I do believe that that result will follow if he is permitted to engage in the art business next door to his brother under the name ££ Wally Findlay Galleries ”, I find also that confusion has resulted from the defendant’s opening of his business next door to plaintiffs’. I credit testimony given on behalf of plaintiffs to the effect that dozens of people have telephoned or appeared at plaintiffs’ premises making inquiry for personnel of defendants’ galleries or for art works exhibited by defendants. It is apparent that confusion must necessarily result from defendants’ conduct. I have concluded that if injunctive relief is not granted, plaintiff will continue to be damaged by confusion and diversion and will suffer great and irreparable loss in his business and in his name and reputation. I have reached this conclusion because for many years the only Findlay Galleries in New York and the terms ££ Findlays in New York ” and ££ Find-lay’s on 57th Street” have always referred only to David’s business. A very significant portion of plaintiff’s business comes from people who have been referred to him by others and who are told to go to “Findlay’s in New York ” or “Findlay’s on 57th Street”. The photographs in evidence show that defendants have erected a sidewalk canopy which displays on the side the name “ Wally Findlay Galleries”. This canopy extends from curb to building and is seen by anyone walldng East or West on 57th Street; this can have but one effect and that is to increase the likelihood that those *653 looking for “Findlay’s on 57th Street” will be easily confused and find their way into defendant’s premises. Confusion is further increased by the fact that both brothers have for many years specialized in French impressionist and post-impressionist painters and from time to time have handled the works of the same artists. An examination of the various exhibits consisting of display advertisements and news reports often appearing upon the same page of a daily newspaper or other publicity and advertising media, are in and of themselves confusing because one sees “Wally Findlay Galleries ” and “ David Findlay ” or “ Findlay Galleries ” on Bast 57th Street, next to each other.
Plaintiff is entitled to protect his investment and the value of the name “Findlay on 57th Street” and the public is entitled to protection against a resulting confusion created by defendant’s conduct. I find that there is no need for Wally to establish himself on 57th Street and much less to buy the building right next to his brother. The proof shows and I find that many, if not most of the leading art galleries, are now located on Madison Avenue and in the area of the 60’s, 70’s and 80’s in New York City. Certainly Wally could have found an appropriate place other than 17 Bast 57th Street to establish his New York art gallery. In my opinion his conduct constitutes unfair competition and unfair trade practices.
Defendant’s position is that the 1938 agreement gave Wally the right to use the name ‘ ‘ Findlay Galleries, Inc. ’ ’; that he is using his own name fairly and honestly in the conduct of his own business and that since 1938 Wally has been using the name 1 ‘ Findlay Galleries, Inc. ’ ’ throughout the United States with the knowledge and acquiescence of David and that Wally has expended large sums of money and effort promoting the name “ Findlay Galleries, Inc.”. I find defendant’s position to be well taken in all respects except one and that is his right to use the name “ Findlay” in the art business on Bast 57th Street next door to David’s place of business. Wally claims that the agreement of July 18, 1938 gives him the right to use the name “Findlay Galleries, Inc.” any place in the world, but I do not think the agreement may be read in that light. I believe and I find that the parties intended that Wally’s right to use the name “Findlay Galleries, Inc.” was limited to Cook County, Illinois. The agreement provides that “Findlay Galleries, Inc.” was to continue in business in New York and it is not reasonable to assume that David and Wally intended that Wally should have the right *654 to come to New York and establish himself in the same business, under the same name, next door to David. The grant of the right to use the name “ Findlay Galleries, Inc.” in the conduct of defendant’s business is contained in the very sentence which provides that “Findlay’s Galleries, Inc.” would not conduct an art business for 10 years from the date of the agreement in Cook County, Illinois. The fourth paragraph speaks of the conduct of the business by defendant in Chicago. I find that the parties did not intend that Wally was to have the right to use that name in New York City. I find that in fact Wally did use that name in Chicago, in Palm Beach and in national advertising, but that he did not use it in New York City and that he was known as “ Findlay Galleries, Inc.” or “ Wally Findlay ” of Chicago, of Palm Beach, and not of New York.
Defendants cite Delancey Kosher Rest. Corp. v. Gluckstern (305 N. Y. 250 [1953]) as authority for Wally’s right to use the name “ Findlay ”. In that case two brothers operated a restaurant known as “ Gluckstern’s ”. They entered into a written agreement under which one brother sold out to the other. The agreement restricted the defendant-seller from using the name “ Gluckstern ” in the operation of a restaurant in a defined area of Manhattan for a limited period of five years. Quoting from the agreement our Court of Appeals wrote as follows (pp. 256-257): “ Under the settlement agreement, Louis and Philip had the right after five years ‘ to engage in any business whatsoever * * * ’ without any territorial restriction. The intention of the parties was clearly and unambiguously set forth, and, when so expressed, ‘ ‘ ‘ effect must be given to the intent as indicated by the language employed ” ’ * * *. We have no right, under the guise of construction, to excise from the settlement agreement the rights and obligations of the parties as defined by them, nor may we add thereto (Friedman v. Handelman, 300 N. Y. 188, 194).”
When, after the expiration of five years the defendant opened Gluckstern’s Restaurant across the street from the plaintiff, an injunction was sought. The lower courts granted the injunction but the Court of Appeals reversed, holding that the parties had clearly set forth their own intention and that defendant was permitted to use the name “ Gluckstern” as a matter of contract between the parties. For the reasons stated I do not believe that Gluckstern is determinative of the issues in this case.
Defendants contend that many cases hold that a person has an absolute right to use his own name in his business unless *655 there has been a showing of a deliberate intention to confuse or mislead the public. I believe defendants are in error. The present trend of the law is to enjoin the use even of a family name when such use tends or threatens to produce confusion in the public mind (Sullivan v. Sullivan Radio & T. V., 1 A D 2d 609, 611 [1st Dept., 1956]; Harvey Mach. Co. v. Harvey Aluminum Corp., 9 Misc 2d 1078, 1081 [1957]). In Higgins Co. v. Higgins Soap Co. (144 N. Y. 462 [1895]) which defendants cite, Charles Higgins, having succeeded to his father’s business, the Chas. ’S. Higgins Company left the business and formed his own corporation under the name “ Higgins Soap Company ” with its principal place of business in Brooklyn, home of the Chas. S. Higgins Company. In enjoining the defendant’s use of the name Higgins, the Court of Appeals spoke of the right of a man to use his own name in business provided the name be honestly used without artifice or deceit, designed or calculated to mislead the public, but then the court went on to say (p. 471): “ The promoters of the defendant, knowing the history of the business established by Higgins, Sr., in 1846, its transfer to the plaintiff, that the product was known to the trade as ‘ Higgins Soap ’, that the business had become very valuable and that large sums had been expended in advertising it, proceeded to organize the defendant corporation under the name of the ‘ Higgins Soap Company,’ and to manufacture soap in the same city where the plaintiff’s business was carried on. The inference seems irresistible that the defendant assumed its corporate name so that it -should carry the impression that it was the manufacturer of ‘ Higgins Soap ’ so well known to the public. But if the name was assumed in good faith, and without design to mislead the public and acquire the plaintiff’s trade, the defendant, knowing the facts, must be held to the same responsibility as if it acted under the honest impression that no right of the plaintiff was invaded.”
In the instant case Wally, knowing that David has conducted his business and is known under the name of “ Findlay Galleries” and “ Findlay ” on 57th Street, and knowing that his brother has been engaged during his entire lifetime in promoting and establishing the name of “ Findlay ” in the art business on 57th Street and strongly suspecting, as he conceded on the stand, that his use of the name “ Findlay ” might result in confusion, nonetheless proceeded to establish the art gallery, dealing in substantially the same paintings and art work as his brother, right next door to his brother, under the name “ Findlay ”.
*656 The use or appropriation of an established business name will be enjoined provided only that it be shown that defendants’ use of such name tends or threatens to produce confusion in the public mind and thus impair the goodwill of the plaintiffs’ business. (Harvey Mach. Co. v. Harvey Aluminum Corp., 9 Misc 2d 1078 [Supreme Ct., N. Y. County, 1957]; Kreisberg v. Wakefield Co., 7 Misc 2d 1036 [Supreme Ct., Westchester County, 1957]; Sullivan v. Sullivan Radio & T. V., 1 A D 2d 609 [1st Dept., 1956]; Albro Metal Prods. Corp. v. Alper, 281 App. Div. 68 [1st Dept., 1952].)
If the foregoing test is met then it is no defense that the name which defendant seeks to use is defendant’s own name. (Higgins Co. v. Higgins Soap Co., 144 N. Y. 462 [1895]; Sullivan v. Sullivan Radio & T. V., supra; Kraysler v. Kraysler, 251 App. Div. 446 [1st Dept., 1937]; Harvey Mach. Co. v. Harvey Aluminum Corp., supra; Macfadden Pub. v. Macfadden, Inc., 224 App. Div. 374 [1st Dept., 1928]; Cliffcorn Answering Serv. v. Deutschel, 23 Misc 2d 254 [Supreme Ct., Kings County, 1960].)
Nor is it material whether defendant intended to confuse and mislead, if in fact, his conduct tends or threatens to produce confusion. (Harvey Mach. Co. v. Harvey Aluminum Corp., supra; Overseas News Agency v. Overseas Press, 185 Misc. 1010 [Supreme Ct., Spec. Term, N. Y. County, 1945]; Albro Metal Prods. v. Alper, supra.)
An excellent statement of the foregoing principles is to be found in Harvey Mach. Co. v. Harvey Aluminum Corp. (supra). In that case the plaintiff had for many years marketed its product under the name “ Harvey Aluminum ” and the defendant Harry Richter had adopted the name ‘ ‘ Harvey Aluminum Corp.” in a business which competed with that of the plaintiff. In enjoining the defendant’s conduct in that action, our late Mr. Justice Benvenga stated as follows (pp. 1080-1081):
“ Unfair competition is a form of unlawful business injury. Originally, it consisted in palming off, or in attempting to pass off, the goods, products or business of another as and for one’s own goods, products or business. In the modern acceptation of that term, it includes not only-, any misrepresentation as to one’s goods, products or business, but also any misappropriation of the trade name, trade-mark, reputation, or good will of another (White Studio v. Dreyfoos, 221 N. Y. 46, 49; Metropolitan Opera v. Wagner-Nichols Recorder Corp., 199 Misc. 786, 795, 800, affd. 279 App. Div. 632), any species of ‘ commercial hitch-hiking ’ (Bard-Parker Co. v. Crescent Mfg. Co., 174 Misc. 356, 360; Diesel Oil & Burner Corp. v. New York *657 Diesel Heating Corp., 197 Misc. 598, 599, affd. 277 App Div. 881).
‘1 Equity will, therefore, enjoin as unfair competition the adoption or use of the trade name, trade-mark or advertising of another, where the apparent purpose is to reap where one has not sown, or to gather where one has not planted, or to build upon, or profit from, the name, reputation, good will or work of another (Forsythe Co. v. Forsythe Shoe Corp., 234 App. Div. 355, 358; Tiffany & Co. v. Tiffany Prods., 147 Misc. 679, 681, affd. 237 App. Div. 801, affd. 262 N. Y. 482; Berolio Import Co. v. N. Katsoris, Inc., N. Y. L. J., June 5, 1953, p. 1902, col. 5, affd. 283 App. Div. 933). It is not essential however, to constitute unfair competition, that there be an actual intent to deceive or mislead the public (Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 469, 471; Madison Square Garden Corp. v. Universal Pictures Co., 255 App. Div. 459, 464; Overseas News Agency v. Overseas Press, 185 Misc. 1010, 1011), unless the cause of action is based upon section 964 of the Penal Law (Association of Contr. Plumbers v. Contracting Plumbers Assn., 302 N. Y. 495, 501; Matter of Julius Restaurant v. Lombardi, 282 N. Y. 126, 129-130, 132). Nor is it any excuse or justification that defendant is using his own name or any part of it, or that the parties are not in actual competition or in identically the same line of business (Ed Sullivan v. Ed Sullivan Radio & T. V., Inc., 1 A D 2d 609, 611; Albro Metal Prods. Corp. v. Alper, 281 App. Div. 68, 69; Astor v. Williams, 1 Misc 2d 1026, 1028, affd. 272 App. Div. 1052; Robert Reis & Co. v. Herman B. Reiss, Inc., 63 N. Y. S. 2d 786, 804, 807). The test is whether the use by defendants of plaintiffs’ name or mark is likely to confuse and mislead the public and injure plaintiffs’ name, reputation, good ivill or business (Ed Sullivan v. Ed Sullivan Radio & T. V., Inc., supra; Albro Metal Prods. Corp. v. Alper, supra; New York World’s Fair 1939 Inc. v. World’s Fair News, 163 Misc. 661, 665, affd. 256 App. Div. 373; Jasco Aluminum Prods. Corp. v. Hasco Mfg. Corp., 143 N. Y. S. 2d 186). (Emphasis supplied.)
In Matter of Ryan & Son v. Lancaster Homes (19 A D 2d 14, 19 [4th Dept., 1963]) the Appellate Division, Fourth Department pointed out that ‘ ‘ Belief may be granted in equity, without a showing of intent to deceive or mislead the public into believing that the defendant’s business is connected with the plaintiff’s, if there is reasonable probability of the public’s being confused by the similarity of the names ”.
Wally’s conduct shows that he must have had some misgivings concerning his absolute right to use the name “Findlay *658 Galleries, Inc.”. As afore-stated he first announced the1 forthcoming opening of the “ W. C. F. Galleries” and advertised under that name and a short time before the actual opening of the New York gallery he opened not under the name of “Findlay Galleries, Inc.” but under his own name “ Wally Findlay Galleries ”. I find no merit in defendants’ contention that David acquiesced in Wally’s use of the name “Findlay Galleries, Inc.” or any variation of the name “Findlay” at any time in New York. I find that immediately upon learning of Wally’s intention, David warned Wally that he would resist his efforts to do business in New York under the name “ Find-lay ’ ’ and I find that David moved promptly and expeditiously in an attempt to prevent the use of the name “Findlay” by Wally in New York immediately upon the commencement of the use of that name by Wally.
In my opinion it is most unfair and inequitable to permit Wally to profit from his brother’s many years of effort in promoting the name of “ Findlay ” on 57th Street; in all good conscience and fair play, Wally should use any name other than “ Findlay” in the operation of his business next door to his brother.
For all the foregoing reasons I find that plaintiffs are entitled to an injunction restraining defendants from using the name or names “Wally Findlay Galleries,” “Findlay Galleries” or any other style or designation incorporating the name “Findlay” in connection with the operation of defendant’s gallery on Bast 57th Street.