*1185 OPINION OF THE COURT
Edward H. Lehner, J.
Before the court is a motion by plaintiff for summary judgment on her complaint in which she seeks the return of the down payment of $84,000 made by her pursuant to a contract with defendant Kaszirer for the purchase of a unit in the condominium building known as 304 East 65th Street in Manhattan. The prime legal issue raised is whether plaintiff is entitled to recover same when the title company retained by her declined to insure title to the unit without exceptions as a result of the refusal of the board of managers of the condominium to certify that it did not possess a right of first refusal to acquire the unit, nor provide other documents required to effect the transfer, unless plaintiff agreed to pay to the board $20,310.72 as an advance of two years of future common charges.
The defendant law firm Shapiro & Shapiro has cross-moved for permission to deposit into court the said $84,000 which it is holding in escrow. The branch of plaintiffs motion to amend the complaint was consented to and the parties agreed that the matter was ripe for summary judgment adjudication (transcript at 3-4).
The contract states that “[i]f so provided in the Declaration or By-laws, this sale is subject to and conditioned upon the waiver of a right of first refusal to purchase the unit held by the Condominium and exercisable by the Board.” However, section 7.1 of the condominium bylaws provides that “[e]ach Unit Owner may sell or lease his Unit without any right of first refusal in favor of the Condominium Board.” But, section 7.2 thereof does grant a right of first refusal to the condominium’s sponsor under certain specified circumstances.
Although the board possessed no right of first refusal, its managing agent advised the parties on May 30, 2006 that the board “does not want to release documents until our office is in receipt of a certified check” from plaintiff for the aforesaid $20,310.72. At the “time of the essence” closing that Kaszirer set for May 31, 2006, plaintiff declined to make such payment, and the title company retained by her refused to omit from its title report an exception: (i) for a right of first refusal, and (ii) in light of the board’s refusal to issue a statement as to whether any common charges were owing, a possible lien as a result of any indebtedness that may be owing by Kaszirer to the board. As a consequence, the bank from which plaintiff had arranged financing declined to complete the loan transaction. Since title *1186 did not close in light of the aforesaid circumstances, plaintiff is now seeking the return of her down payment.
The managing agent for the condominium stated that the reason the board requested the advance was the projected inability of plaintiff to meet future common charge obligations in light of her accountant having reported that for 2005 plaintiff had net income of only $8,102. Both parties agree that there is nothing in the condominium bylaws or declaration giving the board any right to reject a purchaser, nor that grant it an option of first refusal.
Paragraph 18 (c) of the contract provides:
“Seller shall convey and Purchaser shall accept fee simple title to the Unit in accordance with the terms of this Contract, subject only to: (a) the permitted exceptions and (b) such other matters as (i) the Title Company or any other title insurer licensed to do business by the State of New York shall be willing, without special or additional premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Unit (ii) shall be accepted by any lender which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Unit.”
Plaintiff argues that under this provision, the refusal of the title company to omit the aforesaid exceptions from its report entitled her to decline to complete the transaction. Defendant maintains that plaintiff should have complied with the board’s request for the advance, but that in any event it was the failure of plaintiff to timely and fully comply with the board’s requests for financial information that caused it to insist on the advance. Defendant agrees, however, that as a consequence of the title company’s position, she was not in a position to deliver an “insurable title” (transcript at 25).
The general rule when a contract provides for the seller “to deliver a title that a reputable insurance company would approve and insure” is that the seller “breaches his contract when the title company refuses to insure title unconditionally and without exception . . . [unless] the exceptions are those contemplated by the contract” (Laba v Carey, 29 NY2d 302, 307-308 [1971]). Under such a contractual provision, “the burden of producing insurable title has been construed as a condition precedent to the seller holding the purchaser in default” (Gargano v Rubin, 200 AD2d 554, 555 [2d Dept 1994]; see also, Costa v District Nursing Assn. of N. Westchester, 175 *1187 AD2d 274 [2d Dept 1991]; Patten of N.Y. Corp. v Geoffrion, 193 AD2d 1007 [3d Dept 1993]; Gindi v Intertrade Intl., Ltd., 12 Misc 3d 1182[A], 2006 NY Slip Op 51380[U] [Sup Ct, NY County 2006]).
Further, it has been held that, when a title company declines to insure title without an exception a purchaser is “not required to prove that no title company associated with the New York Board of Title Underwriters would insure the title without such exceptions” (Kopp v Barnes, 10 AD2d 532, 535 [2d Dept 1960]), and that “[e]ven if the title company were arbitrary, it would not change the legal consequences for the seller, because it is the seller’s burden to secure the performance of the title company under the clause in question” (Gilchrest-Great Neck v Byers, 210 NYS2d 881, 884 [Sup Ct, Nassau County 1960], adhered to on rearg 27 Misc 2d 1078 [1961], affd 13 AD2d 1027 [2d Dept 1961], affd 11 NY2d 911 [1962]).
Here, while the court understands the board’s concern with respect to a sale of a unit to a purchaser who had a limited net income, there is nothing in the papers submitted that gave the board the right to reject any purchaser, nor to create a condition, such as the advance mandated herein, to it providing a unit owner with simple documents enabling the owner to conclude a sale. While it has generally been thought that one of the advantages of condominium ownership, as opposed to the cooperative form, is the free alienation of one’s apartment, the First Department has recently pointed out that Real Property Law § 339-v (2) (a) does enable a condominium to adopt bylaws governing the sale and occupancy of units “so long as those provisions do not discriminate on the basis of race, creed, color or national origin” nor violate “the common-law rule against unreasonable restraints on alienation” (Demchick v 90 E. End Ave. Condominium, 18 AD3d 383, 384 [2005]).
In light of the conclusion that plaintiff had no legal obligation to pay the requested advance, and since the only reason proffered by the board for its refusal to provide Kaszirer with the requested documents was plaintiffs refusal to make such payment, it cannot be said that plaintiff was in any way in breach of the contract. Hence, since the board’s inaction prevented Kaszirer from being able to deliver an “insurable title,” plaintiff is entitled to the return of her down payment, which paragraph 24 of the rider to the contract provides is her sole remedy in the event Kaszirer is “unable to convey title subject to and in accordance with this agreement.”
*1188 Accordingly, plaintiffs motion for summary judgment is granted and Shapiro shall return to plaintiff the $84,000 down payment being held in escrow.